[No. B194891. Second Dist., Div. Seven. Sept. 5, 2007.]

DEPARTMENT OF FAIR EMPLOYMENT & HOUSING, Plaintiff and Respondent, v.
1105 ALTA LOMA ROAD APARTMENTS, LLC, Defendant and Appellant.

## COUNSEL

Hanger, Levine & Steinberg and Jody Steinberg for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Louis Verdugo, Jr., Assistant Attorney General, Angela Sierra and Nancy A. Beninati, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JOHNSON, J.**—A landlord decided to remove its apartment building from the rental market. In response to the required removal notices under state and local law one of the tenants asserted she was disabled and thus wished to have the usual 120-day period for finding alternate housing extended to a year as provided in state and local law for soon to be displaced disabled tenants. The landlord requested confirmation of the tenant's disability to learn whether it was a qualifying disability within the meaning of the applicable statutes. The tenant believed it would constitute a violation of her right of privacy to divulge such information and accordingly did not supply detailed information regarding her disability to the satisfaction of the landlord. The landlord ultimately had the tenant removed through an action for unlawful detainer. The Department of Fair Employment and Housing (DFEH) brought suit against the landlord for disability discrimination. The landlord moved to strike portions of the complaint as a "SLAPP" (strategic lawsuit against public

participation). The trial court denied the landlord's motion, finding the gravamen of the complaint was for disability discrimination and for this reason the suit did not arise out of the landlord's petition to governmental authorities and protected communications it made in connection with removing its residential units from the rental market. In the event a reviewing court disagreed, the court made a finding it was unlikely DFEH would prevail on its claim for disability discrimination. We affirm.

## FACTS AND PROCEEDINGS BELOW

Defendant and appellant 1105 Alta Loma Road Apartments, LLC (Alta Loma), owned a 13-unit apartment building at 1105–1111 Alta Loma Road in West Hollywood. Real party in interest Marie Mangine had lived in unit number 2 of this residential rental property since 1988.

In early 2004 the principals of Alta Loma decided to remove the apartment building from the rental market. To remove residential property from the rental market requires compliance with rent control regulations of the West Hollywood Municipal Code. West Hollywood Municipal Code section 17.52.010, subdivision 15 adopts and implements the provisions of the California Government Code on the same subject commonly referred to as the Ellis Act (Gov. Code, § 7060 et seq.). The principals of Alta Loma hired Todd Elliott, then of Nossaman, Guthner, Knox & Elliott, LLP, to ensure compliance with these provisions in removing the residential property from the rental market.

Under the Ellis Act and the West Hollywood Municipal Code a tenant generally has 120 days to vacate the premises after notice of removal. On June 30, 2004, Alta Loma sent written notice to all tenants of its intention to remove the property from the rental market effective October 29, 2004. The letter stated notice had been sent to the City of West Hollywood as well as recorded in the Los Angeles County Recorder's office. Attached to the notice was a copy of the West Hollywood Municipal Code listing the requirements for removal and tenants' rights during the removal process.

Also attached to the notice was a personalized notice to each tenant. One of the paragraphs explained the right to relocation fees in the event the tenant

and/or tenant's family qualified as a "lower income household." Another of the paragraphs in this personalized notice explained: "<u>If you are 62 years of age or older or disabled and have lived in the dwelling unit for one year or more prior to this notice</u>, you are entitled to an extension of the noticing period to one (1) year. To receive this extension, you must notify me (us) **in writing** of your entitlement **within 60 days of receipt of this notice**."[1]

Government Code section 12926, subdivision (k)(1) defines a "physical disability" as including, "[h]aving any physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss that does both of the following:

"(A) Affects one or more of the following body systems: neurological, immunological, musculoskeletal, special sense organs, respiratory, including speech organs, cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine.

"(B) Limits a major life activity. . . . "

On July 19, 2004, Mangine sent Alta Loma written notice stating she was "a disabled American," and requested, among other things, an extension of the 120-day period to vacate to one year.

On July 27, 2004, Alta Loma, through its attorney, requested from Mangine "a letter from your physician indicating the nature of your disability."

In response, Mangine sent Alta Loma a note from her doctor. On a prescription pad, Mangine's doctor wrote, "Ms. Mangine is being treated for a disorder that renders her totally disabled at this time."

On August 3, 2004, counsel for Alta Loma sent Mangine a letter. Among other things, the letter stated, "with regard to the issue of your disability status, you will note that Government Code section 7060 (b)(2) defines

---

[1] West Hollywood's required notice is derived from Government Code section 7060.4, subdivision (b). This section provides in pertinent part: "[I]f the tenant or lessee is at least 62 years of age or disabled, and has lived in his or her accommodations for at least one year prior to the date of delivery to the public entity of the notice of intent to withdraw pursuant to subdivision (a), then the date of withdrawal of the accommodations of that tenant or lessee shall be extended to one year after the date of delivery of that notice to the public entity, provided that the tenant or lessee gives written notice of his or her entitlement to an extension to the owner within 60 days of the date of delivery to the public entity of the notice of intent to withdraw." (*Ibid.*)

'Disabled' in accordance with Section 12955.3 of the Government Code (Copy attached and which references Section 12926 of the Government Code). Thus, a note from your doctor which indicates that you are disabled, but does not provide a diagnosis, leaves our client no way of ensuring that you qualify for disabled status and for an extension of your tenancy of up to one year or until June 29, 2005. Accordingly, you must provide evidence that your disability is one that is cited under Section 12926 of the Government Code in order to obtain an extension of your tenancy."

On August 4, 2004, Alta Loma informed the City of West Hollywood, department of rent stabilization, four tenants had requested an extension of their tenancy based on their disability and two of the four tenants, including Mangine, had not yet documented their disability status.

Two days later Mangine sent an e-mail to counsel for Alta Loma. In her e-mail Mangine discussed several topics, including her disability status. Mangine stated, "I can assure you that my disability affects one or more of the body systems as defined in the copy California Government Code 12926, that you have provided. I can also tell you that my disorders have made it impossible for me to, among other things, perform the important duties of my profession. To put it simply, I am unable to work as a result of my disorders. If you would like, I can ask my treating physician to write another note which would include the fact that I am unable to work at this time due to my disorders if it will satisfy your client[']s needs. Based upon what is contained in Government Code 12926 such an addendum should suffice. However, any more details regarding my illness will be challenged as an infringement upon my right to keep my medical condition private."

Around this time a case analyst for real party in interest, the Housing Rights Center, assumed Mangine's representation in the matter. The Housing Rights Center is a nonprofit agency which provides counseling, investigation, and legal services to people who allege unfair housing practices. On September 20, 2004, the Housing Rights Center wrote to counsel for Alta Loma requesting a reasonable accommodation be made for Mangine. The case analyst commented the doctor's note stating Mangine was "totally disabled at this time" should be enough to establish Mangine's disabled status.

In October 2004 counsel for Alta Loma responded he did not doubt Mangine was disabled. Counsel also stated Alta Loma was not opposed to granting her an extension. However, counsel pointed out Mangine's doctor had yet to verify Mangine's disability was one which qualified under the statute for an extension of her tenancy.

In late October 2004 Mangine forwarded a letter from her doctor stating Mangine was "being treated for a physiological chronic disorder that renders

her totally disabled and unable to perform her job as a designer." The balance of the letter then quotes the statutory language describing conditions that do not qualify as disabilities under the statute. The letter states Mangine does not suffer from "sexual behavior disorders, compulsive gambling, kleptomania, pyromania or psychoactive substance use disorders resulting from the current unlawful use of controlled substances or other drugs."[2]

In response, counsel for Alta Loma wrote to the Housing Rights Center stating the doctor's letter came close to satisfying the statutory requirements for establishing a qualifying disability but still failed to specify whether Mangine's disability affected one of the body systems enumerated in the statute. Counsel for Alta Loma advised representatives from the Housing Rights Center if Mangine did not wish to divulge the details of her disability then a note from her doctor tracking the statutory language would suffice and supplied a sample letter. Although the standard 120-day period for vacating the premises had already elapsed, counsel for Alta Loma stated he would allow Mangine until the close of business on December 8, 2004, to provide the requested documentation before beginning unlawful detainer proceedings.

On December 8, 2004, a representative from the Housing Rights Center wrote to counsel for Alta Loma to inform him the requested documentation would not be forthcoming: "Ms. Mangine's doctor feels uncomfortable interpreting the law to reflect that Ms. Mangine's disability is one that is defined under Government Code Section 12926(k). Ms. Mangine's doctor feels it is not within her medical realm and by providing a letter that states, 'Ms. Mangine suffers from a condition defined under Government Code Section 12926(k)' could pose legal and ethical concerns." The representative from the Housing Rights Center stated the doctor's earlier notes were sufficient to establish Mangine's disability and should be accepted as satisfying the statutory criteria "without placing Ms. Mangine's doctor in a position that may jeopardize her medical practice and still respecting Ms. Mangine's privacy by not disclosing the specifics of her disability."

Alta Loma's counsel wrote counsel for the Housing Rights Center to explain Mangine's doctor's notes in combination still did not include the required elements to establish Mangine had a qualifying disability. Counsel closed his letter by saying Mangine's "failure to provide us evidence that she is indeed disabled as defined by Government Code Section 12926(k) unfortunately leaves us no alternative other than to prosecute our client's legal rights in this matter."

---

[2] Government Code section 12926, subdivision (k)(6).

On January 5, 2005, Alta Loma filed an unlawful detainer action against Mangine. Alta Loma voluntarily dismissed this suit without prejudice on January 28, 2005, pursuant to an automatic stay related to Mangine's bankruptcy proceedings.

On May 31, 2005, the bankruptcy court granted Alta Loma's request for an order annulling the automatic stay. The bankruptcy court's order was conditioned on payment of $3,000 in attorney fees to Mangine in opposing the unlawful detainer, and payment of $8,000 in relocation costs, "the amount to which she would be entitled as a relocation fee if she proved that she is a disabled person as she asserts she is," among other conditions. The court's order specified no judgment for eviction could be enforced prior to July 1, 2005.

On June 10, 2005, Alta Loma filed a second unlawful detainer action. It also voluntarily dismissed this action without prejudice and refiled the action on July 1, 2005. Alta Loma secured a writ of possession on August 29, 2005, and Mangine was evicted sometime thereafter in September 2005.

In May 2006 DFEH filed a complaint against Alta Loma for disability discrimination on behalf of Mangine and the Housing Rights Center. Specifically, DFEH's complaint alleged causes of action for (1) discrimination in connection with housing accommodation under Government Code section 12955, subdivision (a), the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.); (2) denial of civil rights under Government Code section 12955, subdivision (d), the Unruh Civil Rights Act (Civ. Code, § 51), and Civil Code section 51.2 et seq.; and (3) denial of civil rights under Government Code section 12948 and Civil Code section 54.1, subdivision (d) for disability discrimination. DFEH's complaint requested injunctive relief, statutory damages, actual damages and costs to the Housing Rights Center, actual damages to Mangine for her emotional distress, and punitive damages for housing discrimination, denial of civil rights and disability discrimination.

In July 2006 Alta Loma filed a motion pursuant to Code of Civil Procedure section 425.16 to strike the damages portion of the complaint. Alta Loma asserted DFEH's entire complaint was based on communications in exercise of its free speech rights made in connection with official proceedings in removing its residential units from the rental market and thereafter in filing unlawful detainer actions. Alta Loma argued DFEH's complaint was an attempt to attack this protected activity. DFEH filed opposition and included declarations from Mangine and her doctor. In her declaration in opposition to Alta Loma's motion to strike, Mangine's doctor stated Mangine "suffers from a chronic condition that affects her neurological, immunological, musculoskeletal and respiratory systems. Ms. Mangine also suffers from depression.

Ms. Mangine feels fatigued and is subject to getting infections, colds and headaches. Ms. Mangine also deals poorly with stress and has difficulty concentrating and remembering things. Ms. Mangine also suffers from insomnia, occasional dizziness, and is jittery. Ms. Mangine's ailments prevent her from functioning well—she needs frequent rest, a lot of time visiting different doctors, and recuperation time from infections. I have held the same medical opinion of Ms. Mangine's condition from 2004 to present."

DFEH requested an award of attorney fees, claiming Alta Loma's anti-SLAPP motion was frivolous and taken for purposes of delay.

The trial court found the gravamen of the complaint was for disability discrimination. The court noted the allegations of the complaint did not concern Alta Loma's petition to remove its residential property from the rental market and only mentioned the fact Alta Loma had filed unlawful detainer actions against Mangine to recover its property. For these reasons, the court found DFEH's suit did not arise from Alta Loma's exercise of its free speech or petition rights and denied Alta Loma's motion to dismiss the complaint as a SLAPP.

On the other hand, and in the event a reviewing court concluded DFEH's suit did arise out of Alta Loma's protected activity, the court found DFEH had not established a reasonable probability of prevailing on the merits of its complaint. The court found DFEH presented insufficient evidence to show Alta Loma knew of Mangine's disability prior to or during the actions alleged in the complaint. The court noted Mangine refused to divulge the precise nature of her disability and it was not until her doctor filed a declaration in opposition to Alta Loma's motion to strike that the doctor for the first time provided details of Mangine's disability.

Although DFEH was the prevailing party the court denied its request for attorneys' fees. The court noted Alta Loma had raised legitimate and interesting legal issues in its moving and reply papers and pointed out the unlawful detainer actions were in fact a form of petition. For these reasons the court could not find Alta Loma's motion frivolous or intended solely to delay the proceedings.

Alta Loma appeals to challenge the denial of its motion to strike portions of DFEH's complaint.[3]

---

[3] Alta Loma's motion to strike was technically deficient. It sought to strike only the damages portion of the complaint. An anti-SLAPP motion applies to "[a] cause of action" arising from any act of that person in furtherance of the person's right of petition or free speech. (Code Civ. Proc., § 425.16, subd. (b)(1).) A motion to strike can also apply to "mixed" causes of action, which allege both protected and unprotected activity. (See, e.g., *Mann v. Quality Old Time*

## DISCUSSION

### I. STATUTORY REQUIREMENTS FOR ESTABLISHING A SUIT IS A SLAPP AND SUBJECT TO A MOTION TO DISMISS UNDER CODE OF CIVIL PROCEDURE SECTION 425.16.

Code of Civil Procedure section 425.16 provides, among other things, a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in conjunction with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."[4] "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ."[5]

■ Section 425.16 sets out a two-step process for determining whether an action is a strategic lawsuit against public participation, or "SLAPP." "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. (§ 425.16, subd. (b)(1).) 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)' (*Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1043 [61 Cal.Rptr.2d 58]). If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. (§ 425.16, subd. (b)(1); see generally *Equilon[ Enterprises v. Consumer Cause, Inc.* (2002)] 29 Cal.4th [53] at p. 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].)

"[I]n order to establish the requisite probability of prevailing (§ 425.16, subd. (b)(1)), the plaintiff need only have ' "stated and substantiated a legally

---

*Service, Inc.* (2004) 120 Cal.App.4th 90, 103, 104 [15 Cal.Rptr.3d 215]; cf. *A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.* (2006) 137 Cal.App.4th 1118, 1124 [41 Cal.Rptr.3d 1] [the anti-SLAPP statute "cannot be used to strike particular allegations within a cause of action."].) However, damages are remedies, not causes of action or claims. Accordingly, the statute was inapplicable for Alta Loma's purpose. The trial court nevertheless overlooked this defect and ruled as though Alta Loma had moved to strike DFEH's entire complaint. We will do likewise.

[4] Code of Civil Procedure section 425.16, subdivision (b)(1). All further unmarked statutory references are to the Code of Civil Procedure.

[5] Section 425.16, subdivision (e).

sufficient claim." ' (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123 [81 Cal.Rptr.2d 471, 969 P.2d 564] (*Briggs*), quoting *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 412 [58 Cal.Rptr.2d 875, 926 P.2d 1061] . . . .)"

"Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute. . . . "[6]

In making each determination the trial court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."[7]

In the present case the trial court found Alta Loma had not satisfied its burden to show the challenged acts in DFEH's complaint "arose from" its protected activity. We review the trial court's ruling on this anti-SLAPP motion independently under a de novo standard of review.[8]

## II. ALTA LOMA FAILED TO MEET ITS THRESHOLD BURDEN TO SHOW THE ACTS ALLEGED IN DFEH'S COMPLAINT WERE IN FURTHERANCE OF ITS RIGHT OF PETITION OR FREE SPEECH.

Alta Loma contends DFEH's complaint is based on (1) the communications it made and actions it took during the rent control removal proceeding, thus constituting communications in an administrative proceeding authorized by law; and (2) its protected activity in filing the unlawful detainer actions in judicial proceedings. Accordingly, Alta Loma contends the trial court erred in finding the gravamen of DFEH's complaint was for disability discrimination rather than based on its communicative acts arising out of its protected activity.

We will assume Alta Loma's acts of filing and serving notices of its intent to remove its residential units from the rental market, its investigation and communications made necessary by the rent control removal process, and its filing and prosecuting its unlawful detainer actions against Mangine constituted protected petitioning or free speech activity. "But the mere fact an action was filed after protected activity took place does not mean it arose

---

[6] *Navellier v. Sletten* (2002) 29 Cal.4th 82, 88–89 [124 Cal.Rptr.2d 530, 52 P.3d 703].

[7] Section 425.16, subdivision (b)(2).

[8] *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 929 [116 Cal.Rptr.2d 187]; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999 [113 Cal.Rptr.2d 625].

from that activity."[9] Instead, " ' "the act underlying the plaintiff's cause" or "the act which forms the basis for the plaintiff's cause of action" must *itself* have been an act in furtherance of the right of petition or free speech.' [Citation.]"[10] In other words, "that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such. [Citation.] In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity. [Citations.]"[11]

In this case, the pleadings and the affidavits submitted by the parties establish the gravamen of DFEH's action against Alta Loma was one for disability discrimination, and was not an attack on any act Alta Loma committed during the rental property removal process or during the eviction process itself.

The allegations of DFEH's complaint consist primarily of the details of the numerous communications between Alta Loma and Mangine and Alta Loma and the Housing Rights Center on Mangine's behalf (noted above), of Mangine's assertions of disability, and Alta Loma's requests in reply for substantiation Mangine suffered from a qualifying disability which would justify an extension of her tenancy. The concluding paragraph of the general allegations states because Alta Loma did not receive the documentation it requested to verify Mangine's disability, Alta Loma initiated the first of three eviction proceedings against Mangine and she was ultimately forced to leave the premises in September 2005. In its request for damages, DFEH's complaint asserts by refusing to reasonably accommodate Ms. Mangine's disability and thereafter initiating multiple eviction proceedings Alta Loma engaged in unlawful housing discrimination in violation of housing discrimination, disability discrimination and civil rights laws. The prayer for relief seeks an injunction ordering Alta Loma to cease and desist from discriminating against, and failing to accommodate, Mangine and any other tenant or housing applicant on the basis of disability. The prayer for relief also seeks statutory and punitive damages, as well as actual damages for the Housing Rights Center's costs in assisting Mangine in her housing and disability claims and for Mangine's emotional distress.

Contrary to Alta Loma's argument, the communications and the actual eviction itself were not the acts attacked in DFEH's complaint. Instead, the allegations of wrongdoing in DFEH's complaint arose from Alta Loma's alleged acts of failing to accommodate Mangine's disability. The letters,

[9] *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76–77 [124 Cal.Rptr.2d 519, 52 P.3d 695].

[10] *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th 53, 66 [124 Cal.Rptr.2d 507, 52 P.3d 685], quoting *ComputerXpress, Inc. v. Jackson, supra,* 93 Cal.App.4th 993, 1003.

[11] *Navellier v. Sletten, supra,* 29 Cal.4th 82, 89.

e-mail and filing of unlawful detainer actions constituted DFEH's *evidence* of Alta Loma's alleged disability discrimination. In other words, DFEH might well have filed the same lawsuit had Alta Loma simply ignored Mangine's claim of disability and requests for extension of her tenancy without any communication from it at all and simply filed a complaint for unlawful detainer.

The decisions Alta Loma rely on do not assist it. In *Vergos v. McNeal*[12] an employee who claimed he had been sexually harassed brought a civil rights suit against, among other persons, the manager who had heard, processed and decided his grievance. The manager moved to strike the causes of action against her as a SLAPP. The trial court denied the manager's motion and the appellate court reversed. The Court of Appeal held the challenged acts of the manager's statements/communications in hearing, processing and deciding the employee's grievance were all done in her capacity as a hearing officer, and in connection with an issue under review in an official proceeding authorized by law. As such, the suit based on her "hearing, processing, and deciding" the grievance were protected acts of free speech and in furtherance of the right of petition of the employee plaintiff and all similarly situated employees.[13] Accordingly, the court held it was error not to grant the manager's motion to strike the causes of action in the employee's complaint against the manager.

In this case, by contrast, DFEH's lawsuit does not challenge any act Alta Loma took with respect to its official filings with the municipality in connection with the removal process. Nor is DFEH's suit an attack on the unlawful detainer actions it filed. DFEH instead sued Alta Loma for its alleged acts in failing to make a reasonable accommodation for Mangine's disability.

■ Alta Loma offers the decision in *Ingels v. Westwood One Broadcasting Services, Inc.*,[14] to emphasize the importance of looking beyond the title of a cause of action to the actual acts complained of to determine whether the anti-SLAPP statute applies. In *Ingels*, a listener sued a radio station for age discrimination alleging it refused to allow him to participate in a call-in show because he was over 60 years old. The radio station moved to strike his

---

[12] *Vergos v. McNeal* (2007) 146 Cal.App.4th 1387 [53 Cal.Rptr.3d 647].

[13] *Vergos v. McNeal, supra,* 146 Cal.App.4th 1387, 1397; see *id.* at p. 1398.

[14] *Ingels v. Westwood One Broadcasting Services, Inc.* (2005) 129 Cal.App.4th 1050 [28 Cal.Rptr.3d 933].

complaint as a SLAPP. Ingels argued there was no nexus between his action for age discrimination and a chilling of the radio station's First Amendment rights and thus it could not be stricken as a SLAPP.[15] The court observed, " 'When considering a section 425.16 motion, a court must consider the actual objective of the suit and grant the motion if the true goal is to interfere with *and burden* the defendant's exercise of his free speech and petition rights.' "[16] The court had "no trouble concluding that [the radio station's] activity in providing an open forum by means of a call-in radio talk show fits within the scope of [the statute]."[17]

In the case at bar, on the other hand, all the acts complained of, regardless of heading or placement in the complaint, concern Alta Loma's alleged acts of disability discrimination in refusing to accept Mangine's claim of disability and in failing to accommodate her disability by extending her tenancy. In this sense the *Ingels* decision favors the trial court's ruling.

The circumstances in the present case are most analogous to the situation in *Santa Monica Rent Control Board v. Pearl Street, LLC*.[18] In *Pearl Street*, the owners/managers of a four-unit rent controlled building filed papers with the city's rent control board (Board) seeking to restore their units to the rental market. The defendants claimed the units had been voluntarily vacated and they were thus entitled to rerent the units at market rate. In reviewing the defendants' paperwork the Board became skeptical and doubted whether the tenancies were legitimate or just a sham to take advantage of higher rental rates. The Board filed an action against the defendants for declaratory and injunctive relief seeking a judicial determination of the maximum allowable rent for the units. The defendants filed a SLAPP motion contending the Board was attempting to punish it for seeking redress of government through means of the rent control process established by the ordinance for increasing a unit's rental rate.[19] The trial court granted the defendants' motion and dismissed the action.

The Court of Appeal reversed. The court assumed the defendants' filing of the forms necessary to obtain a rent increase was "undertaken by defendants

---

[15] *Ingels v. Westwood One Broadcasting Services, Inc., supra,* 129 Cal.App.4th 1050, 1064.

[16] *Ingels v. Westwood One Broadcasting Services, Inc., supra,* 129 Cal.App.4th 1050, 1064, quoting *Foothills Townhome Assn. v. Christiansen* (1998) 65 Cal.App.4th 688, 696 [76 Cal.Rptr.2d 516].

[17] *Ingels v. Westwood One Broadcasting Services, Inc., supra,* 129 Cal.App.4th 1050, 1064.

[18] *Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109 Cal.App.4th 1308 [135 Cal.Rptr.2d 903].

[19] *Santa Monica Rent Control Bd. v. Pearl Street, LLC, supra,* 109 Cal.App.4th 1308, 1315.

in furtherance of their right of petition or free speech, as that phrase is used in section 425.16. But defendants were not sued for their conduct in exercising such constitutional rights. They were sued by the Board to compel their compliance with the provisions of the rent control law."[20] The court agreed the Board's suit was "triggered by" their submission of documents to the Board, but held "it is *not* true that this suit is *based on* the filing of such papers. . . . *This suit is based on the Board's claim that defendants are charging an illegal rent for units A and C.* Not surprisingly, defendants have not presented any authority for the proposition that their conduct in charging illegal rent is an act in furtherance of their rights of petition or free speech. If we were to accept defendants' argument, then they could preclude any judicial review of their violation of the rent control law, no matter how egregious, by simply filing a SLAPP motion in response to any Board complaint. We are confident that the Legislature intended no such application of this statute."[21]

The Court of Appeal also rejected the defendants' argument the paperwork they filed to restore the units to the rental market formed the basis of the Board's causes of action against them. The court noted the documents were "actually just *evidence*" which the Board might use to prove its claims on remand.[22]

So too in the case at bar. This suit might have been "triggered by" Alta Loma's filing, serving and processing the paperwork necessary to remove its residential units from the rental market in accordance with applicable laws. However, it is not true Alta Loma was sued because it filed these notices in the official municipal and state statutory removal process, or because it communicated with Mangine in connection with the process, or even because it filed the unlawful detainer actions against her. This suit is instead based on DFEH's claims Alta Loma discriminated against Mangine by failing to accept the fact of, and accommodate, her disability by granting her an extension of her tenancy to one year. Alta Loma does not claim its alleged conduct of

[20] *Santa Monica Rent Control Bd. v. Pearl Street, LLC, supra,* 109 Cal.App.4th 1308, 1318.

[21] *Santa Monica Rent Control Bd. v. Pearl Street, LLC, supra,* 109 Cal.App.4th 1308, 1318.

[22] *Santa Monica Rent Control Bd. v. Pearl Street, LLC, supra,* 109 Cal.App.4th 1308, 1319, footnote 14; see also *Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388, 1399 [126 Cal.Rptr.2d 560] (an insurer claimed the suit was a SLAPP because it was allegedly based on protected activity—its written communications with the Department of Insurance. The Court of Appeal rejected the insurer's argument "out of hand. This contention confuses State Farm's allegedly *wrongful acts* with the *evidence* that plaintiff will need to prove such misconduct.").

discriminating against Mangine based on her disability was an act in further-ance of its petition or free speech rights.[23]

Moreover, if this kind of suit could be considered a SLAPP, then landlords and owners, if not Alta Loma, could discriminate during the removal process with impunity knowing any subsequent suit for disability discrimination would be subject to a motion to strike and dismissal. We are confident the Legislature did not intend for section 425.16 to be applied in this manner either. As the trial court aptly observed, "I just feel like to rule for the defendant in this case would be to say that section 425.16 provides a safe harbor for discriminatory conduct and I don't think that's what it's intended to do."

█ In sum, Alta Loma has not met its threshold burden of showing this suit is based on protected activity.[24] We thus need not consider whether DFEH demonstrated it is likely to succeed on the merits. Alta Loma, of course, remains free to challenge the lawsuit on other grounds and through other procedural means.[25]

---

[23] For the same reason, the complaint's alleged acts of disability discrimination are not immune from liability under Civil Code section 47, subdivision (b) simply because litigation ultimately resulted from Alta Loma's communications. The anti-SLAPP statute and the litigation privilege are coextensive. If the statute applies then protection under the litigation privilege is congruent. (See *Briggs, supra,* 19 Cal.4th 1106, 1115 [81 Cal.Rptr.2d 471, 969 P.2d 564] [" '[j]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], . . . such statements are equally entitled to the benefits of section 425.16.' [Citations.]"]; *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th 53, 64; *City of Cotati v. Cashman, supra,* 29 Cal.4th 69, 76; *A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc., supra,* 137 Cal.App.4th 1118, 1125–1126 [" '[c]lauses (1) and (2) of section 425.16, subdivision (e) . . . are coextensive with the litigation privilege of Civil Code section 47, subdivision (b).' [Citation.]"].)

Conversely, if the statements and communications do not qualify for protection under section 425.16, subdivision (e)(1) or (2), as in this case, then the litigation privilege is similarly inapplicable in this context.

[24] We conclude the trial court correctly found Alta Loma had not prevailed on its anti-SLAPP motion. We thus necessarily find Alta Loma was not entitled to an award of attorney fees under section 425.16, subdivision (c) for costs incurred in the trial court, and, for the same reason, is not entitled to fees in connection with this appeal. (See, e.g., *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785 [54 Cal.Rptr.2d 830] [this section authorizes the trial court to make an award of reasonable attorney fees to a prevailing defendant to compensate the defendant for the expense of responding to a baseless lawsuit]; *Wilkerson v. Sullivan* (2002) 99 Cal.App.4th 443, 448 [121 Cal.Rptr.2d 275] [prevailing defendant is entitled to recover attorney fees reasonably incurred in pursuing a successful appeal].)

[25] See *Kajima Engineering & Construction, Inc. v. City of Los Angeles, supra,* 95 Cal.App.4th 921, 935.

## DISPOSITION

The order is affirmed. Respondent to recover its costs of appeal.

Perluss, P. J., and Zelon, J., concurred.