Filed 4/21/22  Cairns v. Lions Community Service Corp. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA


| | |
|---|---|
| NIGEL CAIRNS,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>LIONS COMMUNITY SERVICE CORPORATION,<br><br>　　　Defendant and Appellant. | D078310<br><br><br>(Super. Ct. No. 37-2019-00069067-CU-PO-CTL) |


APPEAL from an order of the Superior Court of San Diego County, Gregory W. Pollack, Judge.  Reversed and remanded with instructions.

Kimball Tirey & St. John and Brian C. P. Adkins for Defendant and Appellant.

Nigel Cairns, in pro. per., for Plaintiff and Respondent.


## INTRODUCTION

Nigel Cairns sued Lions Community Service Corporation (Lions Community) for intentional infliction of emotional distress after it initiated proceedings to evict him from his apartment.  Cairns alleged Lions

Community sought to evict him in retaliation after he raised questions about possible racial bias against Black tenants in its subsidized housing facility. Lions Community filed a special motion to strike the operative complaint under the anti-SLAPP (strategic lawsuits against public participation) statute, arguing that Cairns's claim against it was based on protected petitioning activity. (Code Civ. Proc., § 425.16.)[1] The trial court denied the motion on the ground that Cairns's allegation that the eviction was discriminatory, and therefore unlawful, insulated his claim from the anti-SLAPP statute.

We reverse. Our high court confirmed in *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 892 (*Wilson*) that claims based on protected activities alleged to have been unlawful because they were done for a discriminatory or retaliatory reason are *not* exempt from the anti-SLAPP statute. Here, Cairns's claim against Lions Community arose from protected petitioning activities. The trial court erred when it concluded the claim fell outside the scope of the anti-SLAPP statute because Cairns alleged the activities were motivated by discrimination or retaliation. It was also readily apparent that Cairns failed to establish the minimal merit required to proceed with his claim. For these reasons, the anti-SLAPP motion should have been granted. We therefore remand with instructions that the trial court enter a new order granting the motion.

---

[1]    Unspecified statutory references are to the Code of Civil Procedure.

# BACKGROUND

## I.

### *Cairns's Allegations Against Lions Community*

Cairns is a retired physician who lost a large part of his retirement savings in the 2008 recession. When his "resources became worryingly low," he applied to move into the Lions Community Manor (Manor), "a 140 unit apartment complex" owned by Lions Community and subsidized by "HUD" (i.e., the United States Department of Housing and Urban Development). He was accepted and received a "nearly $1K monthly rent subsidy [which] allowed [him] to breathe easily again." He moved into the Manor in May 2017.

In September 2017, Cairns's rent payment was refused. According to the allegations of the Third Amended Complaint (TAC), this problem was solved by "[a] complaint to [the Manor's] management sent via the BBB," presumably the Better Business Bureau.

Because HUD subsidizes the rents paid by tenants of the Manor, "[the Manor] is required to follow 'Equal Opportunity Housing' rules, or face severe penalties." Cairns, who is White, alleged that during his first few months at the Manor, he "became aware that there was a very large number of Chinese residents, but NO Black residents." When Cairns "asked a member of staff[ ] 'why [a]re there about 100 Chinese here, but NO Blacks?,' " the staff member "became angry, but offered no explanation." Cairns alleged that "[b]ecause the proper[ty] management company . . . had always refused [his] phone calls," he "informed" the property management company of his question by "putting up posters on several floors [of the apartment building.]" The posters posed the same question Cairns had asked the staff member. Cairns alleged the posters "were gone within an hour."

3

Cairns alleged he wrote to HUD, and in reply, received information from HUD indicating that 65 percent of the Manor's residents were "Chinese," four percent were "Hispanic," and less than two percent were Black. Cairns alleged that "these figures do not reflect local demographics." He alleged further that "taxpayers' funds [were being] used to subsidize the rents of . . . Chinese who displaced others, equally qualified, but who had a different ethnic background."

About a week after Cairns "asked [his] first question," he received a 90-day eviction notice. "It did not mention the absence of Blacks, but the objective evidence was demonstrably false. The remainder was subjective comments like 'he reduced the livability of the complex." Cairns alleged: "It is important to realize that eviction from a HUD complex leads to immediate HOMELESSNESS for about 3 years because my rent subsidy would cease. At age 72 I would be on the streets with little money. I would be very vulnerable to assault or theft. Would I survive?"

Cairns alleged that during the 90-day notice period, "an astonishing series of harassments occurred." He was accused by another resident of stalking; he was accused by a staff member of assault; technicians trespassed and planted microphones in his apartment; he asked for his tenant file and received a folder with only blank sheets of paper; and the manager refused his rent payment in April and did not allow him to complete certain paperwork. By April 2018, Cairns believed he was "facing . . . certain eviction," so he "gave up[,] gave away EVERYTHING, and set off on foot for Mexico," returning to San Diego several months later.

4

Cairns alleged that his discovery of Lions Community's[2] "illegal actions" prompted Lions Community to "evict [him] and make [him] homeless to prevent dissemination of the facts."

## II.

### *Procedural Background*

On December 31, 2019, Cairns filed a Judicial Council form complaint against Lions Community.[3] He asserted a single cause of action for intentional infliction of emotional distress and sought to recover a total of $1 million in compensatory and punitive damages. He then filed several amended complaints, each asserting the same cause of action and seeking the same damages, culminating in the operative TAC.

A.    *Lions Community's Anti-SLAPP Motion*

Lions Community filed an anti-SLAPP motion to strike the TAC. It argued the TAC's sole cause of action for intentional infliction of emotional distress was based on its service of pre-litigation notices and filing of an unlawful detainer action, which constituted protected petitioning activity

---

[2]    The TAC stated: "After I had discovered *plaintiff's* illegal actions, he sought to evict me and make me homeless to prevent dissemination of the facts." (Italics added.) This allegation appears in support of Cairns's exemplary damages claim against Lions Community. It is apparent from the context that Cairns used the word "plaintiff's" by mistake, and that he meant to refer to Lions Community.

[3]    In the same lawsuit, Cairns also sued the Legal Aid Society of San Diego (Legal Aid) for intentional infliction of emotional distress based on its alleged failure to provide him with legal services in connection with the eviction. The trial court sustained Legal Aid's demurrer and dismissed it from the case. Cairns's appeal of this ruling is proceeding separately under case number D078441.

under section 425.16, subdivisions (e)(1) or (e)(2).[4]  It argued Cairns's claim lacked merit because it was barred by the litigation privilege codified at Civil Code section 47, subdivision (b).  It further argued that Cairns had failed to sufficiently allege intentional infliction of emotional distress; its actions were "regular actions . . . within a property management context" which were "well within the bounds of decency and . . . not outrageous in character"; and Cairns would not be able to substantiate his claim.

In support of its motion, Lions Community submitted a declaration from Gary Urie, an attorney for Lions Community.  Urie explained that at the behest of Lions Community, his firm served a pre-litigation notice (the 10-day notice) on Cairns on July 7, 2017, warning him to cease certain behavior.  The 10-day notice stated that Cairns had been "aggressive" with the Manor's residents, staff and resident manager, and had been "angry" and "demand[ing]" with its service coordinator.  It stated that Cairns's conduct on these occasions had violated his "Resident Guide," which provided that "[d]isruptive behavior that prevents the peaceful enjoyment of [the] Manor by your neighbors is a lease violation," as well as his model lease agreement, which provided that " 'material noncompliance' " included "one or more substantial violations of this Agreement" as well as "repeated minor violations . . . which disrupt the livability of the project."  The notice gave

---

[4]    Section 425.16, subdivision (e), provides in relevant part that an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," and "(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."

Cairns 10 days to cease and desist behavior that was aggressive to staff or that interfered with other residents' quiet enjoyment, and warned him that if he did not comply, Lions Community would initiate legal proceedings to recover possession of his unit.

Urie further averred that on January 22, 2018, his firm served a "90-Day Notice of Termination of Tenancy" (the 90-day notice) on Cairns. The 90-day notice stated that in addition to the 10-day notice previously served on Cairns, Lions Community management had served a letter on Cairns on October 30, 2017, telling him that his "aggressive behavior" was causing staff members and other residents to fear for their safety. According to the 90-day notice, despite these warnings, Cairns had failed to control his behavior, which had "caused a nuisance on the premises." The 90-day notice provided examples of additional instances in which Cairns's conduct materially violated his lease. These included that on January 13, 2018, staff discovered Cairns yelling at another resident whom Cairns had "been warned to stop fighting with." Later, when two staff members went to Cairns's unit to check on him, they discovered that he "had a sign on [his] front door with racial epithets." The 90-day notice additionally stated that on January 14, 2018, Cairns told an off-duty staff member to call the police because someone was threatening him. When the staff member informed Cairns he needed to call the police himself if he felt threatened, Cairns became "angry and aggressive" and yelled at the staff member. The same day, Cairns "posted a racist poster in nine different locations in the building . . . [o]ne of which was on the service coordinator's office door who happens to be Asian."

The 90-day notice stated that if Cairns did not relinquish possession of his apartment within 90 days or by April 23, 2018, whichever was later, Lions Community would initiate legal proceedings against him.

7

Urie averred that on April 25, 2018, after Lions Community advised that Cairns had not vacated his unit, his firm filed an unlawful detainer action against Cairns. A copy of the unlawful detainer complaint, verified by an agent of Lions Community, was attached to Urie's declaration. Urie stated the unlawful detainer complaint was dismissed in early May after Lions Community advised his firm that Cairns had vacated his apartment.

B.    *Cairns's Opposition to the Anti-SLAPP Motion*

Cairns's opposition to the anti-SLAPP motion, filed September 28, 2020, consisted of a two-page brief with three attached exhibits.

Cairns opened his argument by stating: The TAC "includ[ed] an eviction notice which I allege is retaliatory, [and] the near exclusion of Blacks and Hispanics which I allege to be illegal[.]"

He then presented arguments that appeared to be directed at giving his side of the incidents detailed in the notices Lions Community submitted with its motion. Cairns stated that 10 years earlier, he had been diagnosed with "essential tremor," a symptom of which is that "when [he gets] AGITATED, but not angry [he] shake[s] bodily[,] [which] has caused several people to avoid [him]." Cairns attached a copy of a letter from his physician, dated January 17, 2020, confirming that Cairns "suffers from essential tremor afflicting both upper extremities." Cairns essentially argued that although others might perceive him as angry or aggressive during encounters that agitated him, this was a misperception attributable to his essential tremor.

Cairns argued further that in September 2017, after the manager of the Manor refused his rent payment, he "wrote a long detailed complaint" to "the BBB" about the manager's behavior. He attached a copy of this BBB complaint to his opposition brief. It was a three-page, single-spaced document that detailed Cairns's difficulties with another resident of the

8

Manor whom Cairns found to be noisy, as well as a "cunning, chronic liar." Cairns had complained about this resident to employees of the Manor and was dissatisfied with their responses. Cairns believed the manager was telling the resident to do things that Cairns would find intolerable. Cairns stated he believed he had been served with a 10-day notice because the resident and the manager held "grudge[s] against [him]." At the end of the document, Cairns stated, "today my rent was refused, so I assume that the process is starting up again."

Cairns stated in his opposition brief that the "rent refusal" problem was later resolved in his favor. He attached a copy of a September 12, 2017 letter from the property management company that informed him it would accept his rent payment. The last sentence of the argument in Cairns's opposition brief stated, "But the other problems I mentioned were never attended to, and the manager continued to harass me throughout my tenancy (see complaint), even after I had asked '100 Chinese but NO Blacks, why?' "

C.    *The Trial Court's Ruling*

In a minute order issued on October 9, 2020, the trial court denied the anti-SLAPP motion. It ruled Lions Community had failed to establish that the TAC's claim against it fell within the purview of the anti-SLAPP statute. The court stated that ordinarily suits against landlords based on the filing of an unlawful detainer action, or the service of a pre-filing notice, are subject to the anti-SLAPP law. It found, however, that "there is a 'carve-out' exception where the gravamen of the complaint is discrimination[.]"

The trial court explained this " 'carve-out' " exception to the anti-SLAPP statute as follows: "In *Department of Fair Employment and Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273 [(*Alta Loma*)], the [Department of Fair Employment and Housing (DFEH)] brought

9

a disability discrimination against a landlord who had removed a disabled tenant through an unlawful detainer action after the tenant had refused to disclose the nature of [her] disability. . . . The trial court denied the landlord's anti-SLAPP motion, and the Court of Appeal affirmed that denial, holding that the gravamen of the DFEH's complaint was the landlord's alleged discrimination, rather than activity protected by [the] anti-SLAPP statute. The court noted that *if a discriminatory eviction was covered by the anti-SLAPP statute*, a landlord 'could discriminate during the removal process with impunity knowing any subsequent suit for disability discrimination would be subject to a motion to strike and dismissal.' " (Italics added.)

The trial court found that "Cairns alleges that his wrongful eviction *was the result of racial discrimination against him* for opposing racially discriminatory rental practices." (Italics added.) The court denied the motion, concluding—based on its interpretation of *Alta Loma*—that such a claim "falls within the above discussed exception" that "insulate[s]" such claims from "attack by the anti-SLAPP statute."

DISCUSSION

I.

*Legal Principles Applicable to Review of Anti-SLAPP Motions*

"Enacted by the Legislature in 1992, the anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." (*Wilson*, *supra*, 7 Cal.5th at pp. 883–884.) "To that end, the statute authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with

10

a public issue.' " (*Id.* at p. 884, quoting § 425.16, subd. (b)(1).) Section 425.16 thus establishes a procedure for weeding out, at an early stage, meritless litigation "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 312 (*Flatley*).)

An anti-SLAPP motion is evaluated in two steps. "Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) Four categories of protected activities are delineated by the statute. (§ 425.16, subds. (e)(1)–(e)(4).) The moving defendant meets its initial burden by showing that the conduct underlying the challenged claims falls within one of these categories. (*Wilson*, *supra*, 7 Cal.5th at p. 884.) "[T]hat a cause of action arguably may have been 'triggered' by protected activity" is not sufficient to meet this burden. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).) Rather, "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Ibid.*)

If the moving defendant succeeds in meeting this initial burden, the burden shifts to the plaintiff, who must then demonstrate that his claims "have at least 'minimal merit.' " (*Park*, *supra*, 2 Cal.5th at p. 1061.) This step of the process has been described as a " 'summary-judgment-like procedure.' " (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940 (*Sweetwater*).) " '[The court's] inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to

11

determine if it defeats the plaintiff's claim as a matter of law.' " (*Ibid.*)  The plaintiff " 'may not rely solely on its complaint, even if verified; instead, [his] proof must be made upon competent admissible evidence.' " (*Ibid.*)  If the plaintiff fails to meet his second-step burden, the court will strike the cause of action.  (*Wilson, supra*, 7 Cal.5th at p. 884.)

We review the grant or denial of an anti-SLAPP motion de novo.  (*Park, supra*, 2 Cal.5th at p. 1067.)

## II.

### *The Trial Court Erred in Denying Lions Community's Anti-SLAPP Motion*

A.  *Lions Community Met Its Initial Burden of Establishing That Cairns's Cause of Action for Intentional Infliction of Emotional Distress Arose from Its Protected Petitioning Activity*

Lions Community contends the trial court erred in denying its anti-SLAPP motion.  It argues that it met its initial burden of showing Cairns's claim was based on its protected petitioning activities, and that *Alta Loma*, on which the trial court relied to dispose of its motion at step one, was distinguishable.  In his response brief, Cairns "agree[s] that the case cited by the court was irrelevant" because he is "not claiming discrimination."  Rather, he is claiming the 90-day eviction notice was retaliatory, and that it was served in response to his raising questions about Lions Community's alleged discrimination against Black tenants.

On our independent review, we conclude the trial court erred when it ruled that Cairns's suit against Lions Community did not arise from protected activity.  The trial court reasoned that Cairns alleged his "eviction was the result of racial discrimination against him for opposing racially discriminatory rental practices," and that *Alta Loma* carved out an exception insulating allegedly discriminatory evictions from attack under the anti-SLAPP statute.

12

The trial court misunderstood the relevant legal principles. As noted above, the defendant's burden at step one of the anti-SLAPP procedure is to establish that the plaintiff's claims arise from a protected speech or petitioning activity. (*Wilson*, *supra*, 7 Cal.5th at p. 884.) It is true that illegal activity is not a valid exercise of rights guaranteed by the First Amendment, and is therefore not protected by the anti-SLAPP statute. (See, e.g., *Flatley*, *supra*, 39 Cal.4th at p. 317.) However, whether a defendant's activity was illegal can be decided at the first step of the anti-SLAPP analysis only in the "narrow circumstance" where the defendant either "concedes the illegality of its conduct" or "the illegality is conclusively shown by the evidence." (*Id.* at p. 316, discussing *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1367; see *Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1478 ["Our Supreme Court has emphasized that the exception for illegal activity is very narrow and applies only in undisputed cases of illegality."].)

And in *Wilson*, the California Supreme Court confirmed that claims based on protected activities alleged to have been unlawful because they were done for a discriminatory or retaliatory reason are not exempt from the anti-SLAPP statute. "To conclude otherwise would effectively immunize claims of discrimination or retaliation from anti-SLAPP scrutiny, even though the statutory text establishes no such immunity." (*Wilson, supra*, 7 Cal.5th at p. 889.) At the first step of the analysis, "it is the defendant's *acts* that matter," and "[i]f the acts alleged in support of the plaintiff's claim are of the sort protected by the anti-SLAPP statute, then anti-SLAPP protections apply." (*Id.* at p. 887, italics added.) Therefore, at step one of the anti-SLAPP analysis, the focus is on the defendant's *actions* that serve as the basis of the plaintiff's claims; no deference is given to allegations that the

13

actions were unlawful because they were done for a discriminatory or retaliatory reason. (*Id.* at pp. 887–888.)

As the Supreme Court stated in *Wilson*: "[F]or anti-SLAPP purposes discrimination and retaliation claims arise from the adverse actions allegedly taken, notwithstanding the plaintiff's allegation that the actions were taken for an improper purpose. If conduct that supplies a necessary element of a claim is protected, the defendant's burden at the first step of the anti-SLAPP analysis has been carried, regardless of any alleged motivations that supply other elements of the claim." (*Wilson, supra,* 7 Cal.5th at p. 892.) The burden then shifts to the plaintiff, who satisfies his second step burden by stating " ' "a legally sufficient claim" ' " and making " ' "a prima facie factual showing sufficient to sustain a favorable judgment." ' " (*Id.* at p. 891.)

*Alta Loma,* the case on which the trial court relied, was decided before *Wilson,* but it was not contrary to *Wilson. Alta Loma* did not purport to hold that allegedly discriminatory evictions are exempt from the anti-SLAPP statute. Rather, *Alta Loma* involved application of the rule, " 'that a cause of action arguably may have been "triggered" by protected activity does not entail that it is one arising from such," and that "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity.' " (*Alta Loma, supra,* 154 Cal.App.4th at p. 1284, quoting *Navellier, supra,* 29 Cal.4th at p. 89.) The *Alta Loma* court, applying this rule, held that the claims challenged on an anti-SLAPP motion had been triggered by protected activities, but did not *arise from* those protected activities.

In *Alta Loma,* the DFEH filed a complaint for disability discrimination against a landlord after a tenant was evicted. (*Alta Loma, supra,* 154 Cal.App.4th at p. 1280.) The landlord allegedly served a notice advising

14

tenants of its intent to remove an apartment building from the rental market in accordance with local rent control regulations. (*Id.* at p. 1276.) When one tenant claimed she was disabled and sought an extension of time to vacate the unit as provided by law, the landlord was unwilling to accept a doctor's note describing her as " 'totally disabled' " and demanded a detailed description of her disability. (*Id.* at pp. 1277–1279.) When the tenant declined to provide such information on the ground it was private, the landlord refused the requested extension and filed an unlawful detainer complaint. (*Id.* at pp. 1279–1280.)

The complaint filed by the DFEH against the landlord alleged causes of action for housing discrimination, denial of civil rights, and disability discrimination. (*Alta Loma*, *supra*, 154 Cal.App.4th at p. 1280.) The trial court denied the landlord's anti-SLAPP motion, and the Court of Appeal affirmed. It assumed that the landlord's acts of filing and serving notices and filing and prosecuting its unlawful detainer action constituted protected petitioning or free speech activity. (*Id.* at p. 1283.) However, it determined that although these activities were alleged in the complaint, they were not the basis of the complaint. (*Id.* at p. 1284.) Instead, the disability discrimination arose from the landlord's refusal to accept the tenant's claim of disability and accommodate her disability by granting an extension, which were not acts in furtherance of the landlord's free speech or petitioning rights. (*Id.* at pp. 1284–1285.) Accordingly, the *Alta Loma* court concluded the complaint did not arise from protected activities. (*Id.* at pp. 1287–1288.)

Here, the trial court erroneously interpreted *Alta Loma* as standing for the proposition that "a discriminatory eviction" is not "covered by the anti-SLAPP statute." As just discussed, that was not the holding of *Alta Loma*. Instead, *Alta Loma* held the activities underlying DFEH's claims fell outside

15

the anti-SLAPP statute because they were not speech or petitioning activities, not because they were discriminatory. Apparently relying on its misunderstanding of *Alta Loma*, the trial court then concluded that because "Cairns alleges that his wrongful eviction was the result of racial discrimination against him for opposing racially discriminatory rental practices," his lawsuit against Lions Community was "insulated from attack by the anti-SLAPP statute." The court did precisely what the *Wilson* court held was impermissible: it deferred to Cairns's allegations of a discriminatory motive, and based on those allegations, resolved the anti-SLAPP motion against Lions Community at the first step.

On our independent review, we reach the opposite conclusion. Consistent with *Wilson*, we consider whether the acts alleged in support of Cairns's sole cause of action for intentional infliction of emotional distress constituted protected speech activities under section 425.16, subdivision (e). Answering this question is a matter of "consider[ing] the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park, supra,* 2 Cal.5th at p. 1063.) "If conduct that supplies a necessary element of a claim is protected, the defendant's burden at the first step of the anti-SLAPP analysis has been carried, regardless of any alleged motivations that supply other elements of the claim." (*Wilson, supra,* 7 Cal.5th at p. 892.)

"A cause of action for intentional infliction of emotional distress exists when there is ' " ' "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." ' " ' " (*Hughes v. Pair* (2009) 46 Cal.4th

16

1035, 1050–1051 (*Hughes*).)  Although the TAC is not a model of clarity, no dispute was presented in the trial court that Cairns's cause of action for intentional infliction of emotional distress arose from the actions Lions Community took to evict Cairns, and more specifically from its service of the 90-day eviction notice.  An examination of the TAC supports this view.  Lions Community's service of the allegedly unwarranted, retaliatory notice is the central focus of Cairns's allegations that he was intentionally harmed.  The TAC identifies the fear of homelessness instilled by the notice as the emotional distress suffered by Cairns.  It alleges the notice was served on Cairns to "make [him] homeless" and "prevent dissemination of the facts." Thus, service of the notice served as the conduct that supplied the elements of Cairns's claim.[5]

On appeal, Cairns identifies Lions Community's act of serving the 90-day notice as the allegedly tortious act on which the TAC is based.  He disagrees with the trial court's finding that Lions Community's service of the notice was an act of discrimination against him; he explains that his theory is that the notice was retaliatory, not discriminatory, and that it was served in retaliation against him after he questioned Lions Community's apparent illegal discrimination against " 'Blacks.' "  He contends this allegedly

---

[5]    Indeed, in the same minute order in which the trial court denied Lions Community's anti-SLAPP motion, the court also overruled Lions Community's demurrer.  It reasoned that Cairns's cause of action for intentional infliction of emotional distress was based on the allegation he "received an eviction notice one week after he questioned [a Lions Community] staff member and put up posters as to why there were about 100 Chinese residents but no Black residents," and that this was an act of racial animus that constituted the outrageous conduct necessary to support a cause of action for intentional infliction of emotional distress.

17

retaliatory motive removes the service of the notice from the anti-SLAPP statute.

However, under *Wilson*, *supra*, 7 Cal.5th at page 892, at step one of the anti-SLAPP analysis, it is the defendant's conduct, not its allegedly discriminatory or retaliatory motivation for engaging in that conduct, that matters. Here, as Lions Community consistently maintained, Cairns's cause of action for intentional infliction of emotional distress is based on its protected speech activities. (§ 425.16, subds. (e)(1), (e)(2); see *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281-282 [filing and prosecuting an unlawful detainer action "indisputably is protected activity"]; *Feldman v. 1100 Park Lane Assocs.* (2008) 160 Cal.App.4th 1467, 1480 [service of notice to quit and filing of an unlawful detainer action are protected activities].) Accordingly, and contrary to the trial court's ruling, Lions Community met its burden at step one of the anti-SLAPP analysis.

B.   *Cairns Failed to Meet His Burden of Presenting Facts Sufficient to Establish a Prima Facie Claim of Intentional Infliction of Emotional Distress*

Because Lions Community met its initial burden to show the claim against it arises from protected activity, the burden shifted to Cairns to demonstrate a probability of prevailing on his claim. (§ 425.16, subd. (b).) Because the trial court denied the motion at step one, it did not reach this issue, so we exercise our discretion to address it in the first instance. (See *Wilson*, *supra*, 7 Cal.5th at p. 899 [remanding case to Court of Appeal to address the prong two analysis in the first instance]; *Collier v. Harris* (2015) 240 Cal.App.4th 41, 58 [Court of Appeal has discretion to decide the second prong of an anti-SLAPP motion in the first instance].)

To meet his second-step burden, Cairns was required to establish that his cause of action against Lions Community was " ' "both legally sufficient

18

and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by [Cairns] is credited.' ' " (*Navellier, supra,* 29 Cal.4th at p. 89.)

Cairns failed to meet this burden.[6] As noted above, the party opposing an anti-SLAPP motion " 'may not rely solely on its complaint, even if verified; instead, [his] proof must be made upon competent admissible evidence.' " (*Sweetwater, supra,* 6 Cal.5th at p. 940.) Here, Cairns's showing in opposition to the anti-SLAPP motion was limited to his two-page opposition brief and the three exhibits attached to the opposition brief (the January 2020 letter from his doctor stating he suffers from essential tremor; his September 2017 complaint to the BBB; and the letter from the property management company stating it would accept his September 2017 rent). This showing did not include competent admissible evidence. Cairns's assertions in his brief were not made under penalty of perjury. The attached exhibits were not authenticated or otherwise presented with the foundation necessary to establish their admissibility.

Even if we were to overlook these evidentiary deficiencies, the brief and attached documents filed by Cairns in opposition to the anti-SLAPP motion still failed to establish that his cause of action for intentional infliction of emotional distress had factual support. Cairns attempted to offer an

_____

6　We empathize with the difficulties a self-represented litigant like Cairns may face in navigating the anti-SLAPP motion procedures. However, "[t]he same burdens are imposed uniformly and equally on all appellants, and self-represented parties are ' "held to the same restrictive procedural rules as an attorney." ' " (*Burkes v. Robertson* (2018) 26 Cal.App.5th 334, 344–345; see *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984–985 ["the rules of civil procedure must apply equally to parties represented by counsel and those who forgo attorney representation"].)

19

explanation for some of his behavior in the incidents described in the eviction notices. However, he did not attempt to explain all of his conduct that was alleged to have materially violated his lease. And even crediting his version of events, his showing fell short of establishing that Lions Community was not sincere in its position that he had committed acts warranting eviction. He thus failed to offer factual support for the inference that Lions Community's service of the 90-day notice was an act of retaliation for allegedly peaceful questioning about an apparent racial imbalance in its tenant population.

Thus, Cairns's showing fell far short of establishing that Lions Community acted wrongfully, and that it committed an act of " ' " ' "extreme and outrageous conduct" ' " ' " as required to prove intentional infliction of emotional distress. (See *Hughes*, *supra*, 46 Cal.4th at pp. 1050–1051.) Cairns also failed to address other elements of this claim, such as that Lions Community intended to harm him, and that he suffered " ' " ' "severe or extreme" ' " ' " emotional harm. (See *ibid.*) In short, Cairns failed to meet his burden of presenting " ' "a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by [him] is credited." ' " (*Navellier*, *supra*, 29 Cal.4th at p. 89.)

Our conclusion that Cairns's showing in opposition to the anti-SLAPP motion was inadequate ends our prong two inquiry. Lions Community's anti-SLAPP motion should have been granted. As the prevailing party, Lions Community is entitled to an award of attorney's fees. (§ 425.16, subd. (c)(1); see *Wilson*, *supra*, 7 Cal.5th at p. 884 [a defendant that prevails on an anti-SLAPP motion is generally entitled to recover attorney's fees and costs].) Lions Community requested an award of attorney's fees in the trial court,

20

and it has reasserted its request on appeal. The statute makes such an award mandatory, and we perceive no applicable exception to this rule.

## DISPOSITION

The order denying Lions Community's anti-SLAPP motion is reversed. The trial court is directed to enter a new order granting the motion. The trial court shall also award attorney's fees to Lions Community in an amount to be determined by the court. Lions Community is entitled to its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

DO, J.

WE CONCUR:


AARON, Acting P. J.


IRION, J.

21