Filed 6/17/14  Certified for publication 7/14/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| MONIRA ULKARIM,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>WESTFIELD LLC,<br><br>　　　Defendant and Respondent. | B247174<br><br>(Los Angeles County<br>Super. Ct. No. BC487579) |


APPEAL from orders of the Superior Court of Los Angeles County,

Richard E. Rico, Judge.  Reversed.

Law Offices of Stanley H. Kimmel and Stanley H. Kimmel for Plaintiff and

Appellant.

Katten Muchin Rosenman, Brian D. Huben and Janella T. Gholian for Defendant

and Respondent.

Monira Ulkarim appeals an order granting a special motion to strike (Code Civ. Proc., § 425.16)[1] her complaint against Westfield LLC (Westfield). She alleges several counts against Westfield relating to the termination of a lease allegedly in violation of a lease agreement. Plaintiff contends her complaint does not arise from protected activity under the anti-SLAPP statute and she established a probability of prevailing on the merits. We conclude that the complaint does not arise from protected activity. We therefore will reverse the order granting the special motion to strike.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.    *Factual Background*

Plaintiff, doing business as iWorld, sells accessories for cellular phones and other portable electronic devices. Cellairis Franchise Inc. (Cellairis) is a competing retailer. Westfield owns a shopping center in Valencia, California.

Plaintiff and Westfield entered into a lease entitled Short Term License Agreement (Agreement), dated February 1, 2012. Under the terms of the Agreement, Westfield granted plaintiff the right to use space in its shopping center for retail sales for a period of one year ending on January 31, 2013, in exchange for monthly rental payments.

Section 13(a) of the Agreement stated that the lease was terminable by Westfield in the event of default, and section 13(d) stated that Westfield could terminate the lease

---

[1]    A special motion to strike is commonly known as an anti-SLAPP motion. SLAPP is an acronym for Strategic Lawsuit Against Public Participation. All further statutory references are to the Code of Civil Procedure unless stated otherwise.

at will upon seven (7) days' written notice. Section 20 of the Agreement provided that a holdover monthly tenancy would be created if plaintiff failed to surrender the premises "upon the expiration or earlier termination" of the lease and that the monthly base rent would increase to 150 percent of the monthly base rent in effect at that time.

Westfield served on plaintiff a notice of termination dated June 25, 2012, stating that it was terminating the Agreement as of July 3, 2012, pursuant to section 13(d) of the Agreement. Plaintiff remained in possession of the property.

2. *Trial Court Proceedings*

Plaintiff filed a Judicial Council form complaint on June 29, 2012, alleging counts for (1) breach of contract, against Westfield; (2) negligent interference with prospective economic advantage, against Westfield; (3) intentional interference with prospective economic advantage, against Westfield; (4) unfair competition (Bus. & Prof. Code, § 17200 et seq.), against Westfield; (5) violation of Civil Code section 789.3, against Westfield; (6) negligent interference with prospective economic advantage, against Cellairis; (7) intentional interference with prospective economic advantage, against Cellairis; (8) unfair competition, against Cellariis; (9) declaratory relief, against both defendants; and (10) an injunction, against both defendants.

Westfield filed a complaint against plaintiff for unlawful detainer on July 6, 2012. The trial court in the unlawful detainer action entered a judgment on August 15,

3

2012, awarding possession of the leased premises to Westfield and declaring the lease terminated and forfeited.[2]

Plaintiff filed a Judicial Council form first amended complaint on September 17, 2012, eliminating the fifth count for violation of Civil Code section 789.3. She alleges counts for (1) breach of contract, against Westfield; (2) negligent interference with prospective economic advantage, against Westfield; (3) intentional interference with prospective economic advantage, against Westfield; (4) unfair competition, against Westfield; (5) negligent interference with prospective economic advantage, against Cellairis; (6) intentional interference with prospective economic advantage, against Cellairis; (7) unfair competition, against Cellariis; (8) declaratory relief, against both defendants; and (9) an injunction, against both defendants.

Plaintiff alleges that Cellairis induced Westfield to terminate the Agreement and that Westfield had no right to terminate absent a default. She alleges that she became a holdover tenant under section 20 of the Agreement after the purported termination by the notice of termination dated June 25, 2012. She alleges that Westfield failed to serve a 30-day notice to terminate her monthly holdover tenancy and that Westfield's demand for possession after July 3, 2012, violated her rights as a holdover tenant and therefore breached the Agreement.

Plaintiff alleges in her first count that Westfield breached the Agreement by "giving unilateral notice of termination without cause and in bad faith for the purpose of

---

[2]      We judicially notice Westfield's complaint and the judgment in *Westfield, LLC v. Ulkarim* (Super. Ct. L.A. County, No. 12H02428). (Evid. Code, § 452, subd. (d).)

4

transferring Plaintiff's successful business to Cellairis, [and] breached ¶20 of the [Agreement], providing [plaintiff] is a month-to-month tenant upon holdover after 7/3/2012."

Plaintiff alleges in her second and third counts for negligent and intentional interference with prospective economic advantage that Westfield interfered with her business by (1) interfering with her telephone land-line credit card processing; (2) failing to restore her telephone land-line service during a service interruption on November 25, 2011, and again from January 21-23, 2012; (3) notifying her employees and other vendors that her business would be replaced by Cellairis or another vendor, and openly measuring her space during business hours for that purpose; and (4) offering her business to other vendors. She alleges in her fourth count for unfair competition that the same conduct alleged in her prior counts violated the unfair competition law (Bus. & Prof. Code, § 17200 et seq.).

Plaintiff alleges in her eighth count for declaratory relief that controversies have arisen as to whether (1) Westfield can terminate the Agreement without cause, absent any default, for the purpose of benefiting her business competitor; (2) a monthly holdover tenancy has arisen under section 20 of the Agreement; and (3) the notice of termination dated June 25, 2012, actually terminated the Agreement. She seeks a declaratory judgment resolving these controversies.

Westfield filed a general demurrer to the first, second, third, fourth, eighth, and ninth counts. Westfield also filed a special motion to strike the same counts and

5

requests for judicial notice of certain documents.[3] Plaintiff opposed the demurrer and the special motion to strike. The trial court granted the special motion to strike in its entirety in an unsigned minute order filed on December 19, 2012, and took the demurrer off calendar as moot.

The trial court stated in its minute order that Westfield's service of a notice of termination was protected activity under the anti-SLAPP statute and that each count was based in part on Westfield's service of the notice. The court stated that the litigation privilege (Civ. Code, § 47, subd. (b)) "arguably" was a complete defense to the complaint against Westfield and that plaintiff failed to establish a probability of prevailing on the merits because she failed to address the litigation privilege in her opposition to the special motion to strike. The court therefore granted the special motion to strike in its entirety. The court did not rule on Westfield's requests for judicial notice. The court filed a signed order granting the special motion to strike on December 21, 2012.

Plaintiff filed a motion for reconsideration (Code Civ. Proc., § 1008, subd. (a)) of the order granting the special motion to strike. The trial court stated that there was no basis for reconsideration, but granted reconsideration and affirmed its original ruling.

---

[3] Plaintiff dismissed her ninth count without prejudice before the hearing on the special motion to strike and demurrer.

Plaintiff timely appealed the order granting the special motion to strike.[4] The trial court later awarded Westfield $14,911.50 in attorney fees as a defendant prevailing on a special motion to strike (Code Civ. Proc., § 425.16, subd. (c)(1)).

## *CONTENTIONS*

Plaintiff contends (1) her complaint against Westfield does not arise from protected activity under the anti-SLAPP statute; (2) she established a probability of prevailing on the merits, and the litigation privilege is inapplicable; and (3) if the order granting the special motion to strike is reversed, the attorney fee award must also be reversed.

## *DISCUSSION*

1.  *Special Motion to Strike*

"A special motion to strike is a procedural remedy to dispose of lawsuits brought to chill the valid exercise of a party's constitutional right of petition or free speech. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056 [39 Cal.Rptr.3d 516, 128 P.3d 713].)  The purpose of the anti-SLAPP statute is to encourage participation in matters of public significance and prevent meritless litigation designed to chill the exercise of First Amendment rights.  (§ 425.16, subd. (a).) The Legislature has declared that the statute must be 'construed broadly' to that end.  (*Ibid.*)

"A cause of action is subject to a special motion to strike if the defendant shows that the cause of action arises from an act in furtherance of the defendant's

---

[4]     An order granting a special motion to strike is appealable.  (Code Civ. Proc., §§ 425.16, subd. (i), 904.1, subd. (a)(13).)

7

constitutional right of petition or free speech in connection with a public issue and the plaintiff fails to demonstrate a probability of prevailing on the claim. (§ 425.16, subd. (b)(1); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) On appeal, we independently review both of these determinations. (*Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1345–1346 [63 Cal.Rptr.3d 798].)

"An ' "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" ' is defined by statute to include '(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.' (§ 425.16, subd. (e).) If the defendant shows that the cause of action arises from a statement described in clause (1) or (2) of section 425.16, subdivision (e), the defendant is not required to separately demonstrate that the statement was made in connection with a 'public issue.' (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1113 [81 Cal.Rptr.2d 471, 969 P.2d 564] (*Briggs*).)

8

"A cause of action is one 'arising from' protected activity within the meaning of section 425.16, subdivision (b)(1) only if the defendant's act on which the cause of action is based was an act in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695].) Whether the 'arising from' requirement is satisfied depends on the ' "gravamen or principal thrust" ' of the claim. (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477 [87 Cal.Rptr.3d 275, 198 P.3d 66], quoting *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 193 [6 Cal.Rptr.3d 494].) A cause of action does not arise from protected activity for purposes of the anti-SLAPP statute if the protected activity is merely incidental to the cause of action. (*Martinez*, *supra*, at p. 188.) In deciding whether the 'arising from' requirement is satisfied, 'the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).)

"A cause of action that arises from protected activity is subject to dismissal unless the plaintiff establishes a probability of prevailing on the claim. (§ 425.16, subd. (b)(1).) A plaintiff establishes a probability of prevailing on the claim by showing that the complaint is legally sufficient and supported by a prima facie showing of facts that, if proved at trial, would support a judgment in the plaintiff's favor. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 713–714 [54 Cal.Rptr.3d 775, 151 P.3d 1185].) The court cannot weigh the evidence, but must determine as a matter of law whether the evidence is sufficient to support a judgment in the plaintiff's favor. (*Ibid.*) The court must

9

consider not only facts supported by direct evidence, but also facts that reasonably can be inferred from the evidence. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 822 [124 Cal.Rptr.3d 256, 250 P.3d 1115] (*Oasis West*).) The defendant can defeat the plaintiff's evidentiary showing by presenting evidence that establishes as a matter of law that the plaintiff cannot prevail. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733].) The defendant cannot defeat the plaintiff's evidentiary showing, however, by presenting evidence that merely contradicts that evidence but does not establish as a matter of law that the plaintiff cannot prevail. (*Oasis West*, *supra*, at p. 820.)" (*Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1165-1166 (*Faigin*).)

"Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute— i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

> 2.   *Plaintiff's Complaint Against Westfield Does Not Arise from Protected Activity*
>
> a.   *Prior Opinions*

Filing an unlawful detainer complaint is protected activity under the anti-SLAPP statute, as is service of a notice of termination preceding an unlawful detainer complaint. (*Clark v. Mazgani* (2009) 170 Cal.App.4th 1281, 1286 (*Clark*); *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281-282 (*Birkner*).) A cause of action arising from such filing or service is a cause of action arising from protected activity.

10

"But the mere fact an action was filed after protected activity took place does not mean it arose from that activity." (*City of Cotati v. Cashman*, *supra*, 29 Cal.4th at pp. 76-77.) "Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such. [Citation.] In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity. [Citations.]" (*Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 89.)

The question here is whether each count alleged in plaintiff's complaint arises from Westfield's service of the notice of termination or filing of the unlawful detainer complaint. The fact that such service and filing preceded the filing of plaintiff's operative complaint, or even triggered the filing of plaintiff's complaint, does not compel the conclusion that her complaint is based on Westfield's service of the notice of termination or filing of the unlawful detainer complaint. Courts distinguish a cause of action based on the service of a notice in connection with the termination of a tenancy or filing of an unlawful detainer complaint from a cause of action based on the decision to terminate or other conduct in connection with the termination. (*Copenbarger v. Morris Cerullo World Evangelism* (2013) 215 Cal.App.4th 1237, 1245-1249 (*Copenbarger*); *Oviedo v. Windsor Twelve Properties, LLC* (2012) 212 Cal.App.4th 97, 110-111 (*Oviedo*); *Clark*, *supra*, 170 Cal.App.4th at pp. 1286-1290; *Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, 1284 (*DFEH*); *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, 160-161 (*Marlin*).)

11

*Marlin*, *supra*, 154 Cal.App.4th 154, involved two tenants' complaint for declaratory and injunctive relief filed after the landlords filed with the city a notice under the Ellis Act (Gov. Code, § 7060) of their intent to permanently remove the apartments from the rental market and served a notice to vacate on the tenants. The tenants disputed the landlords' purported right under the Act to evict them. The trial court granted the landlords' special motion to strike the complaint. The Court of Appeal reversed. (*Marlin*, *supra*, pp. 156-158.)

*Marlin*, *supra*, 154 Cal.App.4th 154, concluded that the complaint was based on the allegedly unauthorized termination of the tenancy, and was not based on the filing and service of the notices. (*Id.* at pp. 161-162.) *Marlin* stated: "The filing and service of the notices may have triggered plaintiffs' complaint and the notices may be evidence in support of plaintiffs' complaint, but they were not the cause of plaintiffs' complaint. Clearly, the cause of plaintiffs' complaint was defendants' allegedly wrongful reliance on the Ellis Act as their authority for terminating plaintiffs' tenancy. Terminating a tenancy or removing a property from the rental market are not activities taken in furtherance of the constitutional rights of petition or free speech." (*Id.* at pp. 160-161.) Assuming arguendo that the filing and service of the notices was protected activity under the anti-SLAPP statute, *Marlin* held that the tenants' complaint was not based on and did not arise from such protected activity. (*Id.* at pp. 160-162.)

*DFEH*, *supra*, 154 Cal.App.4th 1273, involved a complaint filed by the Department of Fair Employment & Housing (DFEH) for disability discrimination after a tenant's eviction. The landlord served a notice of its intent to remove the property

12

from the rental market pursuant to local rent control regulations. The tenant claimed that she was disabled and requested an extension of time to vacate the unit as provided by law, but she refused to provide detailed information about her disability. The landlord refused her request, filed an unlawful detainer complaint, and evicted her. The DFEH's complaint alleged counts for housing discrimination, denial of civil rights, and disability discrimination. The trial court concluded that the DFEH's complaint did not arise from protected activity and denied the landlord's special motion to strike. The Court of Appeal affirmed. (*Id.* at pp. 1275-1281.)

*DFEH*, *supra*, 154 Cal.App.4th 1273, concluded that the gravamen of the DFEH's complaint was disability discrimination involving the failure to accommodate the tenant's disability. The gravamen was not an attack on any other act committed by the landlord in the rental property removal process or the eviction process. (*Id.* at pp. 1284-1285.) *DFEH* stated that the complaint might have been triggered by the landlord's filing and service of papers in order to remove the property from the rental market, but such conduct was not the reason for the complaint. Instead, the complaint was based on the claim that the landlord's refusal of an extension of time to vacate, which was not an act in furtherance of the owner's free speech or petition rights, was a failure to accommodate a disability and therefore constituted disability discrimination. (*Id.* at pp. 1287-1288.) Accordingly, *DFEH* concluded that the complaint did not arise from protected activity. (*Id.* at p. 1288.)

*Clark*, *supra*, 170 Cal.App.4th 1281, involved a complaint filed by a former tenant against a landlord after her eviction. The landlord evicted the plaintiff from

13

a rent-controlled apartment purportedly to allow the landlord's daughter to reside in the unit, as allowed under a rent stabilization ordinance (RSO). The plaintiff alleged that the reason given was fraudulent and that the landlord failed to pay relocation expenses due under the RSO. The plaintiff alleged counts for violation of the RSO, fraud, and unfair business practices. The trial court granted the landlord's special motion to strike the complaint. The Court of Appeal reversed. (*Clark*, *supra*, at pp. 1284-1285.)

*Clark*, *supra*, 170 Cal.App.4th 1281, concluded that the complaint was based on the termination of the plaintiff's tenancy and purported removal of the unit from the rental market for a fraudulent reason, and was not based on filing or prosecuting an unlawful detainer complaint. (*Id.* at p. 1286.) *Clark* explained: "[Plaintiff's] action against [the landlord] is not based on [the landlord's] filing or service of the notices of intent to evict, it is not based on anything [the landlord] said in court or a public proceeding, and it is not based on the fact that [the landlord] prosecuted an unlawful detainer action against her. The complaint is based on [the landlord's] allegedly unlawful eviction, in that she fraudulently invoked the RSO to evict [plaintiff] from her rent-controlled apartment . . . and also that she failed to pay [plaintiff's] relocation fee." (*Clark*, *supra*, at p. 1288.) *Clark* concluded that the allegedly fraudulent act committed in terminating the tenancy and the failure to pay relocation fees were not protected activity, and therefore concluded that the complaint did not arise from protected activity. (*Id.* at pp. 1289-1290.)

*Oviedo*, *supra*, 212 Cal.App.4th 97, involved a tenant's complaint against her landlord after the filing of a complaint for unlawful detainer. The landlord sought to

14

evict the tenant after she failed to pay a rent increase, but voluntarily dismissed the complaint before trial. The tenant then filed her complaint alleging counts for violation of an RSO and malicious prosecution, among other counts. The trial court granted the landlord's special motion to strike the tenant's complaint. (*Id.* at pp. 105-107.) The Court of Appeal affirmed in part and reversed in part. (*Id.* at p. 115.)

*Oviedo*, *supra*, 212 Cal.App.4th 97, concluded that the count for violation of the RSO was based on the landlord's alleged unlawful rent increase in excess of the amount allowed under the RSO, and was not based on the landlord's filing of the complaint for unlawful detainer or service of prior notices. The count for violation of the RSO therefore did not arise from protected activity. The malicious prosecution count, in contrast, specifically attacked the filing of the unlawful complainer complaint and therefore arose from protected activity. (*Oviedo*, *supra*, at pp. 110-111.)

*Copenbarger*, *supra*, 215 Cal.App.4th 1237, involved a complaint by a sublessee against a sublessor and others after the sublessor served a 30-day notice to cure followed by a three-day notice to cure or quit. The sublessee disputed its obligation under the sublease to repair improvements on the property and alleged that a 60-day notice was required under the sublease. The sublessee alleged counts for declaratory relief, breach of the sublease, and intentional interference with contract. The sublessor later filed a complaint for unlawful detainer. The trial court granted a special motion to strike the sublessee's complaint. The Court of Appeal reversed. (*Id.* at pp. 1241-1243.)

*Copenbarger*, *supra*, 215 Cal.App.4th 1237, stated, "Although an unlawful detainer action itself is protected activity under section 425.16, terminating a lease is

15

not. [Citations.] A complaint arising out of or based on the dispute or conduct underlying the unlawful detainer action is not subject to a special motion to strike." (*Id.* at p. 1245.) *Copenbarger* concluded that the complaint was based on a dispute over the parties' rights and obligations under the sublease, the sublessor's alleged breach of the sublease by failing to serve a 60-day notice, and acts by other defendants allegedly inducing the sublessor to terminate the sublease. The complaint was not based on either the service of the 30-day notice or the filing of the unlawful detainer complaint, and therefore did not arise from protected activity. (*Id.* at pp. 1247-1248.)

The lesson we learn from this line of authority is that a tenant's complaint against a landlord filed after the service of a notice of termination and the filing of a complaint for unlawful detainer does not arise from those particular activities if the gravamen of the tenant's complaint challenges the decision to terminate the tenancy or other conduct in connection with the termination apart from the service of a notice of termination or filing of an unlawful detainer complaint. We decline to follow *Birkner*, *supra*, 156 Cal.App.4th 275, and *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467 (*Feldman*) to the extent that those opinions suggest a different rule.

*Birkner*, *supra*, 156 Cal.App.4th 275, involved a complaint filed by four tenants after their landlord served a notice to terminate the tenancy in order to allow his mother to occupy the unit. The tenants claimed that three of the tenants were not subject to eviction under an RSO because of their age or disability and length of tenancy, but the landlord refused to rescind the termination notice. The landlord later rescinded the

16

notice after his mother died. (*Birkner*, *supra*, at pp. 278-279.) The tenants alleged counts for wrongful eviction in violation of the RSO, negligence, breach of the covenant of quiet enjoyment, and intentional infliction of emotional distress. (*Id.* at p. 278.) The trial court concluded that the complaint did not arise from protected activity and denied the landlord's special motion to strike the complaint. (*Id.* at p. 280.) The Court of Appeal reversed. (*Id.* at p. 287.)

*Birkner*, *supra*, 156 Cal.App.4th 275, concluded that the tenants' complaint was not based on the filing of an unlawful detainer complaint, which was never filed, but instead was based "upon the service and refusal to rescind a notice to terminate plaintiffs' tenancy." (*Id.* at p. 281.) *Birkner* stated that the service of a notice of termination was protected activity because it was a legal prerequisite to filing an unlawful detainer complaint. (*Id.* at p. 282.) *Birkner* distinguished *Marlin*, *supra*, 154 Cal.App.4th 154, by quoting language from that opinion stating that the tenants' complaint in *Marlin* was based on challenging the landlords' reliance on the Ellis Act in terminating the tenancy, and was not based on the filing and service of notices. (*Birkner*, supra, at p. 282.) *Birkner* also distinguished *DFEH*, *supra*, 154 Cal.App.4th 1273, by quoting language from that opinion stating that the DFEH's complaint was based on alleged discrimination, and was not based on the service of notices or filing of papers to remove the property from the rental market.[5] (*Birkner*, *supra*, at p. 283, fn. 3.)

---

[5]   *Birkner*, *supra*, 156 Cal.App.4th 275, similarly distinguished *Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109 Cal.App.4th 1308 by quoting language from that opinion stating that the complaint by the rent control board was based on the defendants' alleged charging of an illegal rent, which preceded the defendants'

But *Birkner*, *supra*, 156 Cal.App.4th 275, failed to explain why the tenants' complaint was not based on the landlord's decision to terminate the tenancy, which was not protected activity, rather than on the service of the notice of termination. *Birkner* therefore failed to explain why its conclusion differed from the conclusions in *Marlin*, *supra*, 154 Cal.App.4th 154, and *DFEH*, *supra*, 154 Cal.App.4th 1273.

*Feldman*, *supra*, 160 Cal.App.4th 1467, involved a cross-complaint filed by subtenants against the owner of an apartment building and others after the owner filed and then dismissed a complaint for unlawful detainer against the tenant and subtenants. The subtenants alleged counts for retaliatory eviction, negligence, negligent misrepresentation, breach of the implied covenant of quiet enjoyment, wrongful eviction, breach of contract, and unfair business practices. (*Id.* at pp. 1473-1475.) The trial court found that all counts alleged in the cross-complaint arose from protected activity and that the subtenants failed to establish a probability of prevailing only on the count for retaliatory eviction, and therefore granted the owner's special motion to strike only as to that count. Both sides appealed. (*Id.* at pp. 1476-1477.) The Court of Appeal concluded that the motion should have been granted on all counts, with the sole exception of the count for negligent misrepresentation. (*Id.* at p. 1499.)

*Feldman*, *supra*, 160 Cal.App.4th 1467, concluded that the subtenants' cross-complaint was based on the filing of an unlawful detainer complaint, the service of a prior notice to quit, and statements threatening eviction. (*Id.* at pp. 1479, 1483.)

protected activity of filing papers to restore apartment units to the rental market, and was not based on the act of filing papers. (*Birkner*, *supra*, at p. 282.)

18

*Feldman* stated that each those acts was protected activity. (*Id.* at pp. 1479-1481.)

*Feldman* distinguished *Marlin*, *supra*, 154 Cal.App.4th 154, by quoting language from that opinion stating that the tenants' complaint in *Marlin* was based on challenging the landlords' reliance on the Ellis Act in terminating the tenancy, and was not based on the acts of filing and serving notices. (*Feldman*, *supra*, at p. 1481.) *Feldman* distinguished *DFEH* by noting the conclusion stated in that opinion that the complaint was based on disability discrimination, and was not based on the acts of filing and serving papers to remove the property from the rental market. (*Feldman*, *supra*, at p. 1482.) *Feldman* stated that the subtenants' cross-complaint in *Feldman* was more similar to the tenants' complaint in *Birkner*, *supra*, 156 Cal.App.4th 275, which was based solely on the service of a notice of termination and refusal to rescind the notice. (*Feldman*, *supra*, at pp. 1482-1483.)

 *Feldman* stated, "We are mindful that the lines drawn in these cases are fine ones. However, we are reminded by our Supreme Court in *Navellier [v. Sletten]*, *supra*, 29 Cal.4th 82, that the 'focus' of the statute 'is not the form of plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability . . . .' (*Id.* at p. 92; accord, *Birkner*, *supra*, 156 Cal.App.4th at p. 281.)" (*Feldman*, *supra*, 160 Cal.App.4th at p. 1483.) *Feldman* stated that the filing of an unlawful detainer complaint, service of a notice to quit, and statements threatening eviction in that case were not merely evidence of wrongdoing or activities triggering the subtenants' cross-complaint, but instead the cross-complaint actually arose from those activities. (*Ibid.*)

19

We find it exceedingly difficult to reconcile the holdings in *Birkner*, *supra*, 156 Cal.App.4th 275, and *Feldman*, *supra*, 160 Cal.App.4th 1467, that the causes of action arose from the protected activity of filing or serving papers in connection with the termination of a tenancy or an eviction, rather than from the underlying decision to terminate the tenancy or evict the tenants, with the holdings in *Marlin*, *supra*, 154 Cal.App.4th 154, *DFEH*, *supra*, 154 Cal.App.4th 1273, and later opinions such as *Clark*, *supra*, 170 Cal.App.4th 1281, *Oviedo*, *supra*, 212 Cal.App.4th 97, and *Copenbarger*, *supra*, 215 Cal.App.4th 1237, that the causes of action arose from the underlying decision to terminate the tenancy or evict the tenants, rather than from the protected activity of filing or serving papers. We decline to follow *Birkner* and *Feldman* to the extent that those opinions suggest a rule contrary to our conclusion.

b. *Breach of Contract and Declaratory Relief*

Plaintiff alleges in her first count for breach of contract that Westfield breached the Agreement by terminating it in bad faith and without a default. She also alleges that the purported termination gave rise to a monthly holdover tenancy under section 20 of the Agreement and that Westfield breached the Agreement by demanding possession of the property without properly terminating the holdover tenancy. She alleges in her eighth count for declaratory relief that controversies have arisen with respect to these same matters and as to whether the notice of termination dated June 25, 2012, actually terminated the Agreement.

The gravamen of the first and eighth counts is that Westfield breached the Agreement by terminating it in bad faith, with no valid grounds for termination, and

20

despite plaintiff's holdover tenancy, and that the notice of termination was ineffective. The gravamen of these counts is not an attack on the service of the notice of termination or the filing of the unlawful detainer complaint. Rather than attack such service and filing themselves, the first and eighth counts attack the underlying decision to terminate. The challenged conduct does not involve protected activity under the anti-SLAPP statute (Code Civ. Proc., § 425.16, subd. (e)), and plaintiff does not argue that it does. We therefore conclude that the first and eighth counts do not arise from protected activity.

      c.     *Negligent and Intentional Interference with Prospective Economic Advantage*

Plaintiff alleges in her second and third counts for negligent and intentional interference with prospective economic advantage that Westfield interfered with her business by (1) interfering with her telephone land-line credit card processing; (2) failing to restore her telephone land-line service during a service interruption on November 25, 2011, and again from January 21-23, 2012; (3) notifying her employees and other vendors that her business would be replaced by Cellairis or another vendor, and openly measuring her space during business hours for that purpose; and (4) offering her business to other vendors.

The gravamen of the second and third counts is that Westfield wrongfully interfered with plaintiff's business by engaging in the specified conduct. These counts arise from the conduct specified above and do not arise from the service of the notice of termination or the filing of the unlawful detainer complaint. Rather than attack the

21

service and filing themselves, these counts attack other conduct that occurred during plaintiff's tenancy or in connection with the termination of her tenancy. The challenged conduct does not involve protected activity under the anti-SLAPP statute, and plaintiff does not argue that it does. We therefore conclude that the second and third counts do not arise from protected activity.

### d. *Unfair Competition*

Plaintiff alleges in her fourth count for unfair competition that the same conduct alleged in her prior counts violated the unfair competition law. The fourth count is based on the same unprotected conduct as the counts discussed above, and therefore does not arise from protected activity.

### 3. *Conclusion*

Plaintiff's complaint against Westfield does not arise from protected activity under the anti-SLAPP statute and therefore is not subject to a special motion to strike. Accordingly, plaintiff need not establish a probability of prevailing on her claims, and we need not decide whether she did so.

Our reversal of the order granting the special motion to strike means that Westfield is not a defendant prevailing on a special motion to strike entitled to an attorney fee award under the statute (§ 425.16, subd. (c)(1)). This compels the reversal of the fee order regardless of whether it was separately appealed. (*Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1027; but see *Allen v. Smith* (2002) 94 Cal.App.4th 1270, 1284 [stating that the Court of Appeal had no jurisdiction to

22

reverse a postjudgment fee award upon reversing the judgment because the fee award was not separately appealed, but that the trial court should do so on remand].)

## *DISPOSITION*

The order granting the special motion to strike and the order awarding attorney fees to Westfield as the defendant prevailing on the motion are reversed.  Plaintiff is entitled to recover her costs on appeal.

CROSKEY, J.

WE CONCUR:

KLEIN, P. J.

ALDRICH, J.

*CERTIFIED FOR PUBLICATION*


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| MONIRA ULKARIM, | B247174 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC487579) |
| v. | |
| WESTFIELD LLC, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | |


THE COURT:

The opinion in the above-entitled matter filed on June 17, 2014, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

[There is no change in the judgment.]