Filled 11/18/25; certified for publication 12/2/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LUCIE NOON, et al., | B339872 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 23STCV15649) |
| v. | |
| FERMIN M. FUENTES, | |
| Defendant and Respondent. | |

APPEAL from order of the Superior Court of the County of Los Angeles, Teresa A. Beaudet, Judge.  Reversed.

Law Offices of Clemente Franco and Clemente Franco for Plaintiffs and Appellants.

TamerLawCorp. and Steven Tamer for Defendant and Respondent.

At issue in this case is whether a landlord who wrongfully evicts tenants from six of his units, without notice, is protected by the anti-SLAPP statute because he filed an unlawful detainer action against the tenant of a seventh unit who, alone, was behind on her rent. We hold this conduct is not protected.

Plaintiffs and appellants Lucie Noon (Noon), Hugo Batres (Hugo), Haroldo Batres (Haroldo),[1] Rigoberto Mena (Mena), and Tolentino Sales (Sales) (appellants) rented units one, three, four, five, and six in a building (the Property) owned by defendant and respondent Fermin Fuentes. In July 2022, they were forced from their homes when sheriff's deputies executed a writ of possession after Fuentes obtained a default unlawful detainer judgment against the tenant of unit seven. Appellants sued Fuentes for wrongful eviction and other claims, alleging he concealed the unlawful detainer proceedings from them and unlawfully terminated their tenancies.

Fuentes filed a special motion to strike the operative first amended complaint pursuant to the anti-SLAPP statute, Code of Civil Procedure, section 425.16,[2] arguing that all of appellants' claims arise from protected activity—the prosecution of an unlawful detainer action. The trial court granted the motion as to 10 of appellants' 11 causes of action, and they appealed. We conclude that appellants' claims do not arise from protected activity and therefore reverse.

---

[1] Because two of the appellants share a surname, we refer to them by their first names. No disrespect is intended.

[2] Undesignated statutory references in this opinion are to the Code of Civil Procedure.

2

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.    Appellants' First Amended Complaint**

We summarize the relevant factual allegations of the operative first amended complaint below.

The Property, located at 1210 Magnolia Avenue in Los Angeles, is a "large single family home" subdivided into at least seven units. Appellants allege the Property is subject to the Los Angeles Rent Stabilization Ordinance (LARSO, Los Angeles Mun. Code, §§ 151.00, et seq.) which permits evictions only in 14 enumerated circumstances[3] and only where the landlord complies with specific notice requirements. (*Id.*, § 151.09, subds. (A)(1)-(14), (C).)

With the exception of brothers Hugo and Haroldo, appellants did not know each other before renting their units. None of the appellants was a subtenant. Each rented directly from Fuentes under separate oral lease agreements and moved into their numbered units at different times. Noon rented unit one in 1999. Hugo rented unit three in 2000, and Haroldo rented unit four in 2000. Mena rented unit five in 2016, and Sales rented unit six in 2019. Each paid monthly rent to Fuentes in differing amounts, and some paid security deposits. Celia

---

[3]    Failure to pay rent is one of the enumerated reasons for evicting a tenant (L.A. Mun. Code, § 151.09, subd. (A)(1)); however, emptying a property of tenants so a private owner can sell it is not. "A landlord's failure to satisfy the eviction requirements in LARSO provides the tenant with an affirmative defense to the former's unlawful detainer action." (*Roxbury Lane LP v. Harris* (2023) 88 Cal.App.5th Supp. 9, 14.)

Roxana Moreno Cisneros (Cisneros)[4] and her partner, Jorge Aldana (Aldana), rented unit seven, but Cisneros moved out in mid-2021.

In September 2021, Fuentes informed appellants he was selling the Property and told them they had to vacate within 60 days. He offered appellants "cash for key[s]." When none of them accepted, he began "a campaign of harassment and threats to force [them] to vacate."

In November 2021, Fuentes filed an unlawful detainer complaint against Cisneros alleging nonpayment of rent. Though Cisneros was the only tenant behind on rent, Fuentes sought possession of the entire Property, not just unit seven. Around this time, Fuentes removed the unit numbers from the apartment doors.

Appellants were never served with the unlawful detainer and knew nothing of the eviction action against Cisneros. Fuentes purported to serve Cisneros by delivering papers to someone named "Maria Lopez," who did not live at the Property. Appellants suspected nothing and restored the unit numbers to their doors.

Fuentes secured defaults against the unlawful detainer defendants in February and May 2022, respectively, but never served the requests for default on appellants. Fuentes again removed the unit numbers from the doors to "g[i]ve the impression that the . . . Property was one single family home rather than the multi-unit property he created and rented."

---

[4] Celia Roxana Moreno Cisneros is identified as "Celia Roxana Moreno" in the first amended complaint but appellants refer to her as "Cisneros" in their opening brief and their opposition to the anti-SLAPP motion.

4

On May 9, 2022, Fuentes obtained a judgment of possession against Cisneros and unnamed occupants. The judgment described the entire Property, not just unit seven. Fuentes did not notify appellants of the judgment. Soon after, he requested and obtained a writ of possession for the entire Property.

On July 6, 2022, sheriff's deputies executed the writ and ordered appellants from the Property. Fuentes did not inform deputies that the writ should apply only to unit seven, that there were multiple units at the Property, and that appellants were not included in the unlawful detainer case. Appellants allege they had not seen or been served with a notice to vacate, and some of them had paid rent for July 2022.

Appellants became homeless and were unable to retrieve most of their personal property. Subsequently, appellants checked with the court but were "told there were no evictions against them."

In July 2023, appellants filed this action and thereafter, filed the first amended complaint. They assert causes of action for (1) wrongful eviction; (2) breach of covenant of quiet enjoyment (tort); (3) breach of covenant of quiet enjoyment (statute); (4) intentional infliction of emotional distress (IIED); (5) violation of Welfare and Institutions Code, section 15610.30; (6) forcible entry; (7) forcible detainer; (8) violation of Civil Code, section 1950.5; (9) fraud; (10) violation of Civil Code, section 789.3; and (11) violation of the Unfair Competition Law (UCL), Business and Professions Code, section 17200, et seq.

**B.     The Anti-SLAPP Motion**

####### 1.     *Fuentes's Motion*

Fuentes filed a special motion to strike all of the causes of action.  He argued that appellants' claims arise from the unlawful detainer case, which was protected activity.  He also argued that appellants could not demonstrate their claims have at least minimal merit.

####### 2.     *Appellants' Opposition*

Appellants submitted declarations in support of their opposition.  Each attested to renting a specific unit with a unit number displayed on the door.  Each unit had its own kitchen and either a bathroom or access to a shared bathroom.  When Fuentes corresponded with appellants during their tenancies, he referred to their particular unit numbers.

After announcing that he was selling the Property, Fuentes offered rent and cash waivers to appellants that in some cases exceeded $5,000. None of them accepted.

Fuentes's verified unlawful detainer complaint, filed on November 29, 2021, attached a copy of a written agreement showing that two tenants, Cisneros and Aldana, rented "Apt. No. 7" at the rate of $950 per month.  However, the only named defendant was Cisneros, and Doe defendants 1 to 10 were described as "subtenants."  Fuentes alleged the defendants failed to pay rent at the monthly rate of $950 pursuant to the attached agreement but did not mention unit seven in the body of the complaint.  Instead, Fuentes alleged that Cisneros was in possession of the entire premises at "1210 Magnolia Ave."

Fuentes alleged that a 15-day notice to pay rent or quit had been served on Cisneros and "All Occupants" in her care.  The

6

proof of service he filed indicates that Cisneros was personally served with the notice at unit seven on September 28, 2021, but nothing in it suggests it was mailed to appellants at their units. The proofs of service of the summons, complaint, and prejudgment claim of right to possession form state that copies of these papers were left with a "Maria Lopez," but again, there is no mention of appellants or any indication that the documents were mailed to their units. Appellants also were not listed among the persons to whom the requests for entry of default were mailed, and Fuentes's counsel did not represent that copies were mailed to their units.

On May 12, 2022, a clerk's default judgment was entered against Cisneros and "all occupants of the premises . . . ." Fuentes was awarded "possession of the premises located at . . . 1210 Magnolia Ave. Los Angeles, CA 90006." The same day, Fuentes applied for and obtained a writ of possession, listing Cisneros as the judgment debtor and omitting unit seven from the address of the premises.

In late May or early June 2022, Hugo and Haraldo noticed the numbers were missing from all of the apartment doors and replaced them. Shortly thereafter, the numbers were removed again.

Appellants attested that when sheriff's deputies executed the writ of possession on July 6, 2022, they were unaware of the unlawful detainer case. They had not seen Cisneros at the Property for more than a year, and never knew a tenant named Maria Lopez.

Though not a plaintiff, Cisneros furnished a declaration. She described moving out in February 2021 because Fuentes was harassing her. She informed Fuentes of her departure and that

7

she was no longer with Aldana, and she provided Fuentes with her new address in June 2021. Cisneros denied being served with a notice to pay or quit or notice to pay rent in connection with her rental of unit seven. She attested that she no longer lived at the Property when the unlawful detainer case was filed, when the complaint was served, or when the request for entry of default was mailed. She denied knowing anyone named Maria Lopez.

In their opposition to the motion, appellants argued that their claims arose from Fuentes's "removal of Plaintiffs from their apartments through fraudulent means, without providing notice or following the unlawful detainer process."

The trial court, however, was persuaded that appellants were actually parties to the unlawful detainer action, even though Fuentes had alleged nonpayment of the rent that was due under the lease of unit seven only. The court found appellants' allegation that the unlawful detainer action "'against another tenant'" was "inconsistent with the allegation that [Fuentes] obtained a judgment 'against [Cisneros] and <u>unnamed occupants</u>.'" Fuentes's action, the court reasoned, was protected activity under the first prong of the anti-SLAPP statute.

The trial court granted the motion as to 10 of appellants' 11 causes of action. It found that, except for the eighth cause of action alleging a failure to return security deposits, Fuentes had shown that the claims arise from protected activity, namely, "the prosecution of the subject unlawful detainer action."

The court found that the burden shifted to appellants to make a prima facie showing sufficient to sustain a favorable judgment. Appellants did not meet their burden, the court found, because they did not address the litigation privilege or provide

8

any argument demonstrating how they would prevail on each cause of action.

Appellants timely appealed from the order granting the anti-SLAPP motion.

## C. Governing Law

Section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." An "'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue'" is defined to include written statements made "before a . . . judicial proceeding" or "in connection with an issue under consideration or review" by a "judicial body" and other conduct "in furtherance of the exercise of the constitutional right of petition." (§ 425.16, subd. (e)(1), (2), (4).)

"Anti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061.) "If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.'" (*Ibid*.) An order granting an anti-SLAPP is reviewed de novo. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.)

9

# DISCUSSION

## A. Prong One

"The defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*).) "A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.' [Citation.]" (*Ibid.*) "To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.]" (*Ibid.*) Courts then must evaluate whether the defendant has shown any of these actions fall within one or more of the four categories of acts' protected by the anti-SLAPP statute. (*Ibid.*; § 425.16, subd. (e).)

In this first step analysis, we "'consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'" (*Area 51 Productions, Inc. v. City of Alameda* (2018) 20 Cal.App.5th 581, 594; § 425.16, subd. (b)(2).) To determine whether a claim arises from protected activity, we disregard its label and instead examine its gravamen by identifying the allegedly wrongful and injury-producing conduct that provides the foundation for the claim. (*Area 51, supra,* 20 Cal.App.5th at p. 594.) Prelitigation communications may provide evidentiary support for the complaint without being a basis of liability, and the mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of

10

the anti-SLAPP statute. (*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland* (2020) 54 Cal.App.5th 738, 753; *Area 51, supra,* 20 Cal.App.5th at p. 594–595.)

**B.     Analysis**

Appellants argue that, "[a]t bottom, this case is based on the fraudulent termination of a tenancy." They argue that they are "seek[ing] redress because [Fuentes] terminated their tenancies and effectuated an eviction *without resorting to the judicial process*—which, if anything, is the opposite of petitioning activity." We agree.

To be sure, the unlawful detainer action is heavily referenced in the first amended complaint. However, "a tenant's complaint against a landlord filed after . . . the filing of a complaint for unlawful detainer does not arise from those particular activities if the gravamen of the tenant's complaint challenges the decision to terminate the tenancy or other conduct in connection with the termination apart from the . . . filing of an unlawful detainer complaint." (*Ulkarim v. Westfield LLC* (2014) 227 Cal.App.4th 1266, 1279 (*Ulkarim*); *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, 161 ["Terminating a tenancy or removing a property from the rental market are not activities taken in furtherance of the constitutional rights of petition or free speech"]; see *Clark v. Mazgani* (2009) 170 Cal.App.4th 1281, 1288 [complaint challenging landlord's removal of apartment from rental market and fraudulent eviction of tenant was not premised on initiating or prosecuting unlawful detainer action].[5])

---

[5]     Fuentes cites a single case, *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281, to support his argument that appellants' claims

11

Here, the gravamen of appellant's claims is not Fuentes's filing or prosecuting the unlawful detainer against the tenants of unit seven, but rather, his improper termination of appellants' tenancies to accommodate a sale of the Property. Appellants' wrongful eviction claim requires them to establish their peaceable possession of their units and Fuentes's forcible entry. (*Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1039–1040.) "If a tenant is forcibly removed from premises without judicial process, such tenant can sue for wrongful eviction" and obtain damages. (*Munoz v. MacMillan* (2011) 195 Cal.App.4th 648, 655.)

We cannot find from the record before us that appellants were parties to the unlawful detainer action against Cisneros and "unnamed occupants." First, the only basis for the unlawful detainer action was the alleged nonpayment of rent as to unit seven. That allegation could not support the eviction of tenants

arise from protected activity. *Birkner* concluded that a tenant's complaint "arose from" protected conduct because the "'sole basis for liability'" was the landlord's service of a notice to terminate a tenancy and a refusal to rescind the notice. (*Id.* at p. 283.) However, *Birkner* "ha[s] been criticized for failing to recognize that the critical consideration is whether the claim *is based on* defendant's protected free speech or petitioning activity. The mere fact that a claim may have been *triggered* by protected activity (such as service of unlawful detainer papers) does not necessarily mean it *arose from* that activity." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2025), ¶ 7:598; see *Ulkarim, supra*, 227 Cal.App.4th at pp. 1279–1280 ["*Birkner* [citation] failed to explain why the tenants' complaint was not based on the landlord's decision to terminate the tenancy, which was not protected activity, rather than on the service of the notice of termination"].)

12

in other units in the building.  Nor can we find that appellants were lawfully served and given notice as "unnamed occupants." The unlawful detainer complaint itself defines the unnamed defendants as "subtenants."  None of appellants, apparently, were subtenants, as they had individual rental agreements with Fuentes for separate units.  Indeed, the written lease agreement with Cisneros defines the premises she was renting as "Apt. No. 7."  The only "unnamed occupants" legally served with the unlawful detainer action would have been unnamed occupants of unit seven.[6]

Appellants' allegations and evidence indicate they were occupying units in a multi-unit building pursuant to separate rental agreements.  Fuentes's stated reason for wanting appellants to vacate—to facilitate his sale of the Property—was not a reason for eviction permitted by the LARSO, and his cash for keys offers suggest that he understood this.  Appellants allege

---

[6]     Section 415.46 provides a procedure to notify unnamed potential occupants of eviction proceedings.  "At the time the *named defendants* are served with summons and complaint [citation], landlords also have the *option* of serving a 'prejudgment claim of right to possession' form, attached to a copy of the summons and complaint, on *unnamed* adult occupants of the premises.  This procedure effectively *shifts* the burden to the unnamed occupants to *add themselves as defendants* to the action by *timely filing* a claim of right to possession."  (Friedman, et al., Cal. Practice Guide: Landlord-Tenant (The Rutter Group 2025), ¶ 8:131.1.)  Nothing in the record indicates that appellants were served with the claim of right form in the manner required by this section.  (See § 415.46, subd. (c)(2).)  Indeed, according to their allegations, appellants were *not* unknown to Fuentes.  If the unlawful detainer action was truly meant to evict everyone living in the Property, Fuentes knew where to find the other tenants, according to appellants.  They had separate lease agreements with him and had been paying rent to him for years.

13

that when he could not convince them to leave voluntarily, Fuentes resorted to deceptive and fraudulent conduct to terminate their tenancies in violation of LARSO.

Fuentes first concealed the unlawful detainer actions from appellants and removed indicia of multiple living units from the premises before the sheriff's lockout. When the sheriff's deputies arrived to evict appellants, they were misled by Fuentes into believing that the apartment building was merely one unit and that the writ of possession applied to appellants. In response to Haroldo's truthful statement to a sheriff's deputy that he had not received anything from the court, Fuentes' falsely stated that Haroldo was "'playing games,'" misleading the deputy into believing the writ required the lockout of not only Cisneros, but appellants too. These acts do not arise from filing and prosecuting the unlawful detainer case against the tenants of unit seven, which was merely one "'step leading to some different act for which liability is asserted.'" (*Wilson, supra,* 7 Cal.5th at p. 884.)[7]

The other claims incorporate these allegations by reference. Though these claims are cast differently and under distinct legal theories, the unlawful termination of appellants' tenancies is the indispensable feature of all of them.

In the claims for breach of the covenant of quiet enjoyment, the unlawful termination of appellants' tenancies is the alleged act of breach. In the IIED claim, the same conduct is alleged to have caused appellants emotional distress. In the elder abuse claim, Mena alleges this conduct constituted the taking of his

---

[7]     To hold differently would deprive appellants of any legal process to challenge their eviction. Not parties to the unlawful detainer action, they could not defend against it or appeal the final judgment.

property with fraudulent intent.  (Welf. & Inst. Code, § 15610.30, subd. (a)(1) [financial abuse of an elder adult occurs when a person "[t]akes," "appropriates," or "obtains" the real property of an elder adult "for a wrongful use or with intent to defraud, or both"].)  The same conduct supplies the elements of a forcible entry and forcible detainer, as required by these causes of action.  (*Jordan v. Talbot* (1961) 55 Cal.2d 597, 607; § 1172.)  In the fraud claim, appellants rely on Fuentes's concealing the unlawful detainer proceedings to establish the element of concealment or suppression of a material fact.  (See *Hambrick v. Healthcare Partners Medical Group, Inc.* (2015) 238 Cal.App.4th 124, 162.)  The above-described conduct is alleged to be the means by which Fuentes "prevent[ed] [appellants] from gaining reasonable access to" their units in violation of Civil Code, section 789.3, subd. (b)(1).  Finally, the same conduct is the basis for appellants' UCL cause of action, which alleges that Fuentes engaged in unlawful business practices by violating Civil Code sections 1927[8] and the provisions of the LARSO provisions governing evictions (L.A. Mun. Code, §§ 151.09, 151.10.)

In sum, Fuentes fails to demonstrate that any of these causes of action is based on the unlawful detainer action.  He has failed to carry his first prong burden.

---

[8]     "An agreement to let upon hire binds the letter to secure to the hirer the quiet possession of the thing hired during the term of the hiring, against all persons lawfully claiming the same."  (Civ. Code, § 1927.)

15

## DISPOSITION

The trial court's order granting Fuentes anti-SLAPP motion is reversed. The trial court is directed to vacate its order and enter a new order denying the motion. Appellants shall recover their costs on appeal.

\*\*VAN ROOYEN, J.

We concur:

ZUKIN, P. J.

TAMZARIAN, J.

---

\*\*    Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LUCIE NOON, et al., | B339872 |
| Plaintiffs and Appellants, | Los Angeles County<br>Super. Ct. No. 23STCV15649 |
| v. | |
| FERMIN M. FUENTES, | ORDER GRANTING<br>PUBLICATION |
| Defendant and Respondent. | |

THE COURT*

The opinion in the above-entitled matter filed on November 18, 2025, was not certified for publication in the Official Reports. Good cause appearing, it is ordered that the opinion in the above-entitled matter be published in the Official Reports.

*ZUKIN, P. J.        TAMZARIAN, J.        VAN ROOYEN, J. **

---

**        Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.